[L. A. No. 25568.   In Bank.   Dec. 18, 1959.]

LEONOR GUERRA, Appellant, v. HANDLERY HOTELS, INC. (a Corporation), Respondent.

*Assigned by Chairman of Judicial Council.

Robert C. Thaxton for Appellant.

John W. McInnis and McInnis, Focht & Fitzgerald for Respondent.

GIBSON, C. J.—Plaintiff fell or was thrown to the floor while a passenger in an elevator in defendant's hotel, and she sustained severe injuries when her left arm was caught between the wall of the elevator shaft and the front edge of the floor of the moving car. She brought this action, alleging that her injuries were caused by defendant's negligence. The jury found for defendant, and plaintiff's motion for judgment notwithstanding the verdict was denied. On appeal she contends

that she was entitled to judgment under the evidence as a matter of law and that the trial court erred in instructing the jury.

The elevator car was about 5½ feet wide and 4 feet deep, and it was equipped with handrails. It did not have a door, but at the lobby floor, as at the other floor levels, there was a door 3 feet wide and 7 feet high in the wall of the shaft. This door closed automatically after an appropriate button was pressed, and the elevator was designed so as not to move until the door was completely shut. Viewed from inside the car, the door closed from right to left. A handle attached to a bar on the inside of the door protruded 1½ inches into the shaft, slanting downward and to the left. When the door was completely closed, the tip of the handle was about four feet above the floor level and 6 inches to the right of the left door jamb. The car floor was about 3 inches from the door and cleared the handle by about an inch.

A draftsman employed by plaintiff to draw a diagram of the elevator testified that, when the door was closed, the handle on the inside was in such a position that it could catch clothing extending one and an eighth inches beyond the front edge of the car.

The testimony of plaintiff may be summarized as follows: On the day of the accident she dined with four companions, two of whom were celebrating their wedding anniversary. Between 9:30 and 10 p. m., the group went to a Navy officers' club where plaintiff had one drink, a whiskey sour. After midnight the party went to defendant's hotel for the purpose of visiting a cocktail lounge on the top floor. They entered an empty elevator at the lobby floor, followed by the operator, who had been standing near the clerk's desk. Plaintiff, who had not been in the hotel previously, was the last of her party to enter, and she did not have a chance to position herself properly and was turning around to the right when the car started upward suddenly. She did not see the operator come in or hear him say anything. As the car started to move, she felt a tug at the left sleeve of her coat, which was caught "in the door or something." Things then happened so quickly that she was not sure what occurred. She fell forward, her left arm was wedged between the moving car and the shaft wall, and her left leg was broken, apparently when she struck the floor. She did not know how her arm became caught. None of her companions pushed her, and she

was not feeling the effects of the drink she had consumed at the officers' club. Plaintiff was wearing high heels and a coat with large turned-up cuffs. She was in good health and had never suffered from fainting spells.

Plaintiff called as witnesses her four companions who said that each member of the party, including plaintiff, had a single drink at the officers' club. They testified that the elevator moved suddenly before they were settled, and some of them stated that it started with a lurch, that they did not have enough time to turn around completely, and that they did not hear the operator say anything. According to one man the operator was about 20 feet away when plaintiff got in, and eight or ten seconds elapsed before the operator entered, closed the door, and started the elevator. This witness noticed plaintiff standing "in the middle of the car" with her back partly to the door as the car started to move, and immediately thereafter he saw her face downward on the floor with her arm wedged between the car and the shaft wall and with her feet diagonally back from the door, toward the rear of the car. None of plaintiff's companions saw what caused her to fall.

The operator testified that when he entered the elevator plaintiff and her companions were inside and toward the rear of the car, that plaintiff was standing away from the door, and that it was not necessary for him to push anyone back when he pressed the button to shut the door. He said that he faced forward to operate the controls, that the car did not start with a jerk but worked as usual, and that after the car had traveled about 4 feet he saw plaintiff on the floor crying.

An engineer employed by the California Division of Industrial Safety testified that, on the basis of inspections which he made of the elevator before and several months after plaintiff was injured, the facilities complied with safety regulations, that the car started smoothly and accelerated slowly and that the maximum speed of the elevator was set at one-half the permissible rate and could not be increased by the operator.

█ In considering plaintiff's contention that she was entitled to judgment as a matter of law, we must take the evidence in the light most favorable to defendant, and, when this is done, we cannot say that the court erred in denying plaintiff's motion for judgment notwithstanding the verdict.

█ The jury was instructed at defendant's request, "The mere fact that an accident happened, considered alone, does

not support an inference that some party, or any party, to this action was negligent.'' It is error to give the quoted instruction where the doctrine of res ipsa loquitur applies as a matter of law. (*Alarid* v. *Vanier*, 50 Cal.2d 617, 625 [327 P.2d 897] ; *Jensen* v. *Minard*, 44 Cal.2d 325, 329 [282 P.2d 7].)

▇ The doctrine is applicable where the accident is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the person who is responsible.

▇ As aids in determining whether it is more probable than not that a defendant's negligence caused the accident, the courts have considered such circumstances as the plaintiff's own conduct and the likelihood of negligence on the part of some third person. (*Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436, 446-447 [247 P.2d 344].) ▇ The jury here could have concluded that there was no greater probability that the accident was due to defendant's maintenance or operation of the elevator rather than to some other cause, such as the conduct of plaintiff and of her fellow passengers. Thus the application of res ipsa loquitur depended upon a determination of the factual issues and was not compelled as a matter of law.

▇ It has been recognized in several decisions that the instruction on the mere happening of an accident involves a danger of confusing and misleading the jury to the prejudice of the plaintiff where, as here, the doctrine of res ipsa loquitur is applicable in the event of certain factual determinations. This court was called upon to consider the problem 16 years ago in *Brown* v. *George Pepperdine Foundation* (1943), 23 Cal.2d 256 [143 P.2d 929], where the minor plaintiff fell down an elevator shaft. Both the challenged instruction and one on res ipsa loquitur were given without an explanation of the relationship between them, and, in affirming an order granting the plaintiff's motion for a new trial, this court pointed out that the jury may have been confused by the inconsistent tenor of the two instructions. (23 Cal.2d at pp. 261-262; see also *England* v. *Hospital of Good Samaritan* (1937), 22 Cal.App.2d 226, 230 [70 P.2d 692] ; *Ellis* v. *Jewett* (1937), 18 Cal.App.2d 629, 634 [64 P.2d 432].) The recent case of *Shaw* v. *Pacific Greyhound Lines*, 50 Cal.2d 153, 159 [323 P.2d 391], where no instruction on res ipsa loquitur was given but one containing only minor defects was requested by the plaintiff, also affirmed an order granting the plaintiff's motion for a new trial, reasoning that the instruction in question might have misled the jury. The difficulty created by

the instruction in a res ipsa loquitur case was again noted in *Phillips* v. *Noble,* 50 Cal.2d 163, 166-168 [323 P.2d 385], which held, in accord with *Barrera* v. *De La Torre,* 48 Cal.2d 166, 170-172 [308 P.2d 724], that the plaintiff cannot successfully complain on appeal of the giving of this instruction where res ipsa loquitur is not applicable as a matter of law and no instruction on the doctrine is requested or given.

The danger in giving the challenged instruction is that the jury will improperly fail to accord the plaintiff the benefit of res ipsa loquitur since, as stated in *Shaw* v. *Pacific Greyhound Lines,* 50 Cal.2d 153, 156 [323 P.2d 391], the instruction "contains an idea which might be understood by a layman to be inconsistent with the doctrine of res ipsa loquitur." The direction that the mere fact that an accident happened, considered alone, does not support an inference of negligence might be understood as being inconsistent with the concept underlying res ipsa loquitur, namely, that, in the light of the probabilities as disclosed by the surrounding circumstances, the happening of a particular accident gives rise to an inference that it was proximately caused by defendant's negligence. In the absence of a proper explanation, "the words 'mere' and 'considered alone' might not prevent laymen from erroneously concluding that under no view of the evidence could an inference of negligence be drawn from the happening of the accident." (50 Cal.2d at p. 156.) It cannot be overemphasized that instructions should be clear and simple in order to avoid misleading the jury. While it may be possible to give a technically correct explanation of the relationship between the instruction and the doctrine, it is difficult as a practical matter to formulate an explanation which will assure that there will be no confusion on the part of the jurors who, without legal training, are called upon to understand and apply a number of other complex instructions.

The instruction in question not only involves the danger of confusion harmful to a plaintiff in a res ipsa loquitur case but is unnecessary in order to protect the defendant's interests.[9] If jurors are correctly instructed on the prerequisites of res ipsa loquitur, it will be clear that the inference of negligence under the doctrine does not arise from the mere fact of injury without regard to the probabilities as disclosed by the surrounding circumstances. In a somewhat analogous situation we condemned an instruction on unavoidable accident, pointing out that the instruction served no useful purpose because the ordinary instructions

on negligence and proximate cause were sufficient for a proper trial of those issues and that the unnecessary concept of unavoidability and its problematic relation to negligence and proximate cause might confuse and mislead the jury. (*Butigan* v. *Yellow Cab Co.*, 49 Cal.2d 652, 658-660 [320 P.2d 500].)

It follows that the instruction on the mere happening of an accident should not have been given. After examining the entire record, however, we are of the view that there was no miscarriage of justice. (See Cal. Const., art. VI, § 4½.) As we have seen, the doctrine of res ipsa loquitur was not applicable as a matter of law because the evidence did not establish a probability that defendant, rather than plaintiff or her fellow passengers, was responsible for the accident. Yet the court erroneously instructed the jury at plaintiff's request that an inference of negligence on defendant's part arose from "the happening of the accident involved in this case as established by the evidence." This instruction, which unmistakably referred to the facts of the present case, immediately followed the one complained of. The jury was thus instructed in a manner extremely favorable to plaintiff, since it was told in effect that, although the happening of an accident did not usually support an inference of negligence, such an inference against defendant arose here from the happening of the accident "as established by the evidence." Under the circumstances it cannot be said that the giving of the instruction on the mere happening of an accident constituted reversible error.

Plaintiff also asserts that the court erred in refusing to give a number of instructions which she requested, but we are satisfied that the refused instructions were defective or contained matters substantially covered in the instructions given by the court.

The judgment is affirmed.

Traynor, J., Schauer, J., Spence, J., McComb, J., Peters, J., and White, J., concurred.