19 Cal.Rptr. 734]

[Crim. No. 4002. First Dist., Div. Three. Mar. 6, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. MONROE
RENCHIE, JR., Defendant and Appellant.

Richard C. Lewis, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny and Derald E. Granberg, Deputy Attorneys General, for Plaintiff and Respondent.

DEVINE, J.—Appellant was convicted of four armed robberies, all committed in the City of Oakland on January 20, 1961, and January 22, 1961. Victim of the first robbery was an employee of a liquor store; victims of the second and third robberies were an employee of a hot dog stand and a customer; and victim of the fourth robbery was an employee of another liquor store. Defendant denied commission of the crimes and presented the defense of alibi, testifying himself as to his presence in San Francisco at the times of the robberies, and being supported in his testimony by one witness as to the times of all three instances of robbery (the second and third robberies, at the hot dog stand, are referred to as a single instance of robbery, so far as time is concerned, because the two victims were robbed at almost the same moment), and by two other witnesses as to the time of the third robbery. At least two of the witnesses had seen a picture of appellant in the police department's "mug file." Appellant

was on parole at the time of the commission of the robberies, and police exhibited his picture to one of his friends, who then informed appellant that the police were looking for him, and appellant reported to his own parole officer, who in turn brought him to the Oakland police. Thereafter, a line-up was arranged, at which the four victims of the robberies identified the defendant. They looked through a one-way mirror and reported their identification to police officers. They testified that each spoke in a soft voice to the officers so that no other victim could hear the identification, which was done by giving the number in the line-up, which in every case was the third from the left. One of the witnesses, however, had testified at the preliminary hearing that he had identified the robber by exhibiting three fingers to the officers, an action which he did not remember at the time of the trial. The evidence connecting defendant with the offenses was exclusively identification by visual inspection. There was no circumstantial evidence, such as possession of a weapon, possession of loot, or possession by defendant of clothing similar to that worn by the robber.

The defense took two courses: first, a testing by cross-examination of the identification made by the victims, and, second, a positive defense of alibi. It is appellant's contention that he was prejudiced by two errors in the course of the trial, the first being the ruling of the court that he was not entitled to the production of notes made by the police relating to their conversations with the identifying witnesses, because the demand for such notes was not made until the time of trial; and the second, that the district attorney, in his argument to the jury, made use of the prior conviction of appellant of robbery, some three years earlier, not for the allowable purpose of impeachment only, but for the purpose of showing that the prior offense was committed, as were two of the present ones, at a liquor store, and that this was unallowable. We agree that there was error in both instances.

 During cross-examination of the victim of the first robbery, Peterson, a witness who conceded that identification had been difficult because in his robbery the robber had worn dark glasses and a hat pulled low over his forehead, defense counsel requested notes made by the inspector and police officer at the time of the original interview with the witness or the report in which these notes were incorporated. The district attorney announced that he had a summary of what the inspector wrote down but did not have any original notes,

and the district attorney conceded that the summary which he had may have come from what the witness had said to the inspector or from other reports. Defense counsel wished to approach the bench for the purpose of making a further request, but the court would not permit this and ruled, in effect, that the demand was untimely, because inspection should have been sought prior to the trial. The court agreed to rule on the production of anything which the district attorney had readily available, but that ''if counsel [the district attorney] says that's all he has, why, that is all.'' Defense counsel, it appears, understood this ruling to mean that all that would be produced upon his demand was, at the most, what was in the district attorney's file. He asked if the district attorney had a certain ''blue crime report'' commonly made by the Oakland Police Department, and the district attorney replied he did not know what was meant by ''blue'' (blue report, no doubt), and that he could do no more than give what he had in the courtroom. The court agreed with this. Defense counsel requested that if officers should come in with the description theretofore given by the witness Peterson, the witness might be recalled, and the court replied, ''[W]e'll cross that bridge when we come to it.''

During the cross-examination of the other three victims, defense counsel demanded only the notes which the district attorney had in the courtroom, evidently in deference to the court's ruling. Later, defense counsel referred to the ''blue crime report'' in cross-examining a police inspector, and the inspector testified that there is such a report, which is usually kept in the office of the police department, that the report contains the description given by the victim of the robbery to the interviewing officer, and that the district attorney's office can get it, and usually does, but in this case had not asked for it. At this point, the court interjected that how the district attorney chooses to try his case is his business and that the defense should proceed with the issues in the case.

The court was in error in ruling that demand came late when made at trial. Production of notes or reports, such as those referred to here, may be demanded either at trial or before trial. (*People* v. *Estrada,* 54 Cal.2d 713, 716 [7 Cal. Rptr. 897, 355 P.2d 641]; *Funk* v. *Superior Court,* 52 Cal.2d 423, 424, [340 P.2d 593]; *People* v. *Riser,* 47 Cal.2d 566, 586 [305 P.2d 1].) Indeed, the holding that the accused may have certain discovery before trial (*Powell* v. *Superior Court,* 48 Cal.2d 704 [312 P.2d 698]) was a consequence of the earlier

determination of the right of the accused to production of certain documents in the prosecution's possession at the time of trial (*People* v. *Riser, supra;* see Louisell, *Criminal Discovery: Dilemma Real or Apparent?* (1961) 49 Cal.L.Rev. 56, 75-79).

A brief consideration of the points made by the Attorney General on this subject is in order. He suggests that the situation is analogous to one wherein the defense moves for a continuance to secure evidence or to procure a witness, which the court may deny, in its discretion, upon the ground that such evidence could have been secured before trial (*People* v. *Buckowski,* 37 Cal.2d 629, 631 [233 P.2d 912]). We do not regard the analogy valid in the case before us. The reports were easily accessible to the district attorney. The distinction attempted between the documents in possession of the police and those which had been handed to the district attorney, a distinction which ran throughout the trial and which the court should have noticed was the effect of its first ruling, is not sound. The district attorney represents the People during the course of the trial, and, although it is not his duty to engage in active discovery for the benefit of the defense, the burden of disclosure as distinguished from discovery, at least where such disclosure, as in this case, requires a minimum of effort, rests upon the prosecution as represented by the district attorney. The distinction between disclosure and discovery, in this regard, has been made in *People* v. *McShann,* 177 Cal.App.2d 195, 198 [2 Cal.Rptr. 71] ; and in *People* v. *Render,* 181 Cal.App.2d 190, 195 [5 Cal.Rptr. 236].

The Attorney General makes the argument that certain differences between the actual appearance of the defendant in court, which was described for the record, and descriptions which the witnesses testified they had given to the police, so far as they could remember such descriptions, actually did appear at the trial and no doubt were considered by the jury, which, despite such differences, found defendant guilty. It is, indeed, a curious contention for the prosecution to say that because its witnesses were shown to have been partly in error, and nevertheless there was a conviction, we should draw the deduction that even had they been shown, by their original statements to the police, to have been chargeable with more discrepancies, conviction still would have been had. Moreover, as has been pointed out in some of the cases on compulsory production of witnesses' statements of this nature, the statements may not only weaken or destroy an identification, but

also may contain other contradictions to the testimony of the witness, may omit some facts related by the witness at the trial, or may reveal a contrast in the emphasis placed on the same facts. (*People* v. *Chapman*, 52 Cal.2d 95, 98 [338 P.2d 428].)

Whether or not an error in failure to make proper disclosure is prejudicial is a singularly difficult task, because, unlike cases wherein improper evidence has been admitted, or improper remarks made or erroneous instructions given, and unlike cases wherein evidence has been excluded improperly after an offer of proof has been made, in the case where disclosure has been withheld improperly we simply do not know what the withheld information was, and we cannot weigh it against the other factors in the case. In our case, there are other errors and we have considered these, so that our determination is not based upon any one of them alone.

■ The second error claimed by the appellant is this: During the cross-examination of defendant, the district attorney asked him if he had been convicted of the felony of robbery, if he had been armed with a deadly weapon, and if he had been sentenced to the State prison therefor, and defendant responded in the affirmative. The district attorney then asked if the robbery did not involve the Bradley Liquor Store in Turlock, California. There was no objection, and defendant again replied in the affirmative. The question was improper and an objection to it, if made, should have been sustained, because although conviction of a felony may be shown for the purpose of impeachment, the inquiry is limited to the fact of conviction of felony and the character of the felony, and the details or circumstances surrounding a crime may not be gone into. (*People* v. *Braun*, 14 Cal.2d 1, 6 [92 P.2d 402].) No objection or motion to strike having been made, and no admonition asked, there was at that time no error of which appellant could now complain. However, during his argument, the district attorney attempted to convert the use of the prior felony conviction from that of impeachment only to substantive proof by arguing to the jury that when the identification was made in the line-up, each of the victims selected a man who had previously been involved in robbery of a liquor store. This was error not unlike that in *People* v. *McCoy*, 185 Cal.App.2d 98, 105 [8 Cal.Rptr. 70], in which the district attorney examined defendant as to whether the place at which the robbery of which he had been convicted some years before was the same place at which

the robbery for which he was presently being tried had occurred. The fact that the evidence had gone in without objection did not mean that the district attorney was entitled to argue it when objection was made during the argument, because, of course, the defense counsel may have decided to let the improper question pass without calling particular attention to it, and then decided, when the district attorney followed the matter up in argument, that objection should be made to the argument. The court sustained the defense objection and gave a proper instruction at the time, that the previous conviction was to be considered only for the purpose of weighing the credibility of the witness, but the district attorney persisted in his argument so that the court had to make five separate rulings and admonitions to the district attorney, even threatening mistrial. Despite all of that, the district attorney finally asked if, by the court's ruling, there was evidence that could not be argued. The court then instructed the district attorney to discuss the subject no more and to proceed, and this was done.

Here, again, in determining whether or not the error was prejudicial we are not obliged to take this incident alone. In examining the whole record to decide if there has been a miscarriage of justice, we have found another error which, while not raised by appellant in his briefs, is to be weighed in the scales; for, although we have not searched the record for the purpose of finding errors which were not pointed out by appellant, the court is at liberty to consider, and even to decide, a case upon any points that its proper disposition may seem to require whether taken by counsel or not (*Burns* v. *Ross,* 190 Cal. 269, 276 [212 P. 17]), and we are struck by the presence in the charge to the jury of an instruction which has been held flatly to constitute prejudicial error.

We refer to this sentence in the court's instructions, which disparages the defense of alibi: "However, you should scrutinize the testimony in support of the alibi in order to satisfy yourselves that a fabricated defense is not being imposed upon you." Almost 20 years ago, the Supreme Court held that in cases where the evidence raises a conflict as to the presence of the defendant at the scene of the crime, as it surely does here, an instruction in the form given in this case is prejudicial error, even if the instruction otherwise informs the jury, as it does in our case, that it is sufficient if the evidence relating to alibi creates a reasonable doubt in the

minds of the jurors (*People* v. *Costello,* 21 Cal.2d 760 [135 P.2d 164]).

In the case before us, the instruction on alibi was particularly pointed up by this incident: In his argument to the jury, the district attorney referred to the defense of alibi as being one in confession and avoidance, and this was objected to by defense counsel, whereupon the court stated that the law on the subject would be given in the court's instructions. The plea of confession and avoidance, as its name implies, admits the cause of action and sets up some matter in avoidance of it (41 Am.Jur. § 158, p. 403). Nothing could be more opposed to confession and avoidance than the defense of alibi, especially when presented by a defendant who has been charged with personal participation in a crime, as distinguished from aiding or abetting from a distance. Indeed, there is no separate pleading of the defense of alibi, because the plea of not guilty puts in issue any allegation of the accusatory pleading, except those allegations regarding previous convictions of the defendant (Pen. Code, § 1019), including the issue of identity of the defendant with the person who committed the offense (*People* v. *Wong Sang Lung,* 3 Cal.App. 221 [84 P. 843]). The reference to confession and avoidance was a derogation of the defense of alibi, and although in itself it may not have been of great importance, it caused the court to tell the jury that the law on alibi would be forthcoming in the court's charge, at which time, as appears above, the court gave the erroneous and prejudicial instruction.

The judgment and the order denying motion for new trial are reversed.

Draper, P. J., and Salsman, J., concurred.

A petition for a rehearing was denied March 22, 1962, and respondent's petition for a hearing by the Supreme Court was denied May 2, 1962. Schauer, J., was of the opinion that the petition should be granted.