[Crim. No. 6151.   First Dist., Div. Four.   Feb. 2, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. MARK EVERETTE WILSON, Defendant and Appellant.

Erling J. Hovden and Richard S. Buckley, Public Defenders, Steven H. Hough, Philip H. Smith and James L. McCormick, Deputy Public Defenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Lola M. McAlpin, Deputy Attorney General, for Plaintiff and Respondent.

CHRISTIAN, J.—Appellant was convicted in the municipal court of disturbing the peace, a misdemeanor. The judge received information that appellant had been a user of narcotics; therefore an order was entered reciting that it appeared that "by reason of repeated use of narcotics [defendant] may be in imminent danger of becoming addicted to narcotics, . . ." Thereupon, pursuant to Welfare and Institutions

Code, section 3050, the criminal action was adjourned and appellant was certified to the superior court for further proceedings.

The superior court appointed two physicians to examine appellant and after a hearing found that appellant was in imminent danger of addiction and committed him to the custody of the Director of Corrections for placement at the California Rehabilitation Center, Corona.

Appellant then requested trial by jury. The verdict of the jury confirmed the order of commitment and this appeal followed. ■■ The order of commitment is appealable as a final judgment in a special proceeding. (*In re De La O* (1963) 59 Cal.2d 128, 156 [28 Cal.Rptr. 489, 378 P.2d 793, 98 A.L.R.2d 705].)[1] On appeal it is urged that the evidence does not support the finding of imminent danger of addiction. Certain other attacks are made upon the judgment, but we do not reach them because clearly prejudicial errors in the court's instructions to the jury require a reversal.

The only evidence received at the jury trial was the testimony of the two medical examiners and that of appellant himself. The physicians testified that they had together examined appellant briefly and taken a history from him on April 1, 1966. The entire examination lasted less than 25 minutes.

On appellant's right arm the examiners found, over a collapsed vein, a scar which in their opinion was about six months old, indicating repeated injections (probably more than three times) of corrosive material such as heroin. Appellant's right wrist was heavily scarred; he related that this injury was self-inflicted in a suicide attempt in April 1965, while he was under the influence of seconal.

Appellant's entire history of drug abuse was succinctly reviewed by one of the physicians as follows:

"Subject stated he had used marijuana three years ago, some pills about a year ago; that he had injected seconal in a vein once in 1965; that he had first used heroin in July of 1965. The most he had ever used in one day, he stated, was one cap and the frequency, twice a month. He stated further that he had only used heroin three times, and that was all in July of 1965. He stated further that he had used L.S.D. about twenty times in the summer of 1965, up to a last use on

---

[1] The appeal is purportedly taken from the order of commitment, the order denying motion for judgment notwithstanding the verdict, and the order denying motion for new trial. The latter two orders are not appealable.

December 31st, 1965. He stated that he had used cough syrup approximately ten months ago, and that he had used emperin compound containing codeine, a prescription belonging to a friend about twenty pills, all used in a week about six weeks ago, referring to the time of the examination. He stated that he preferred L.S.D. and marijuana to heroin or the codeine, and that he had used, but that he had used the various drugs about as often as they were made available to him. He stated that his arrest was made three weeks previous to the time of examination for being under the influence of seconal. He stated further that his suicide attempt, made in April, '65, in which he had cut his left wrist, from the scar apparently quite deeply, had been while under the influence of seconal.''

Both physicians found in appellant's history and demeanor evidence of marked emotional instability and a strong propensity to turn to drugs for relief of the anxiety and stress which beset him. Appellant also showed a lack of insight regarding the danger he was exposing himself to by using drugs. Both examiners concluded that appellant was not yet physically dependent upon narcotics. One gave his opinion that appellant was already emotionally dependent upon narcotics while the other disagreed. Both predicted with certainty that appellant would continue his established pattern of using narcotics and other prohibited drugs and concluded that addiction was inevitable and imminent.

Appellant testified that a few days before the trial he had learned that the pills he had been taking were not codeine as he had told the examiners but Miltown, a non-narcotic tranquilizer. He admitted injecting heroin three times and taking cough syrup containing codeine, but denied using any other narcotics since July of 1965.[2] Appellant declared that he had no desire to return to the use of narcotics, that he had achieved an understanding of the personal problems which had caused him to use drugs, and that he no longer associates with the people who formerly encouraged him to take narcotics.

It is true, as appellant contends, that a mere showing of preliminary experimentation with narcotics is insufficient to support a finding that a person is ''by reason of repeated use of narcotics . . . in imminent danger of becoming

---

[2]Marijuana, seconal and L.S.D. are not narcotics within the statutory definition applicable to this proceeding. Codeine, whether in the form of cough syrup or of pills, is a narcotic. (Welf. & Inst. Code, § 3009; Health & Saf. Code, § 11001.)

addicted thereto. . . ." In upholding the constitutionality of the statutes authorizing involuntary commitment of persons in imminent danger of addiction, the Supreme Court in *People* v. *Victor* (1965) 62 Cal.2d 280, 305 [42 Cal.Rptr. 199, 398 P.2d 391], declared: "the legislation is not vulnerable to defendant's charge that it subjects to narcotic commitment proceedings individuals who simply suffer from 'personality disturbances' or predisposition toward addiction. The legislation does not reach such persons until by repeated *acts* of obtaining, preparing, and ingesting an addictive drug they demonstrate that they have failed to resolve their problems by socially acceptable methods and that total addiction is just a matter of time. When that stage is reached, the state has the right and duty to intervene for the protection of the individual in question and of society at large."

The requirement of the statute that a finding of imminent danger of addiction must be based upon repeated actual use of narcotics was again recognized and applied by the Supreme Court in *People* v. *Bruce* (1966) 64 Cal.2d 55, 64 [48 Cal. Rptr. 719, 409 P.2d 943]. The evidentiary test was summarized with the statement that no showing of actual addiction or withdrawal symptoms is required, "if other evidence is sufficient to show repeated use of heroin to the extent that the person has failed to solve his problems by socially accepted methods and that he is emotionally or physically dependent upon narcotics and is, therefore, in the opinion of qualified examiners either addicted thereto or in imminent danger of becoming so addicted." Applying that test to the facts presented, the Supreme Court in *Bruce* reversed the order of commitment.

In the *Bruce* case the Supreme Court also considered what information the medical examiners were entitled to take into account in arriving at their opinions. There the defendant complained that "the medical witnesses should not have been permitted to review the report of the probation officer which was in the file, asserting that such report includes hearsay evidence and that the effect was to deny the defendant a fair trial. This objection has no merit because it ignores the nature of these proceedings. The law clearly contemplates that the medical examiners shall have the benefit of all relevant information to better enable them to make their diagnoses, and, as pointed out, the form of the certificate required of the doctors specifically includes 'pertinent case history.' " (64 Cal.2d at p. 60.)

In the case at hand the objective facts of repeated use of narcotics were indicated by proof of the scar at the site of the heroin injections, by appellant's own admission at the trial that he had used heroin three times and had used codeine on a number of occasions, and by his admissions to the examining physicians related by them in the medical history.

The next element of proof identified in *People* v. *Bruce* is the existence of present emotional or physical dependency upon narcotics. ▅ Welfare and Institutions Code, section 3050 lays down no such requirement for a commitment based upon imminent danger of addiction, and in *People* v. *Victor, supra,* 62 Cal.2d at p. 305, the court stated that repeated use of narcotics is an indispensable factual predicate for a finding that a person "is in imminent danger—in the commonsense meaning of that phrase discussed above—of becoming emotionally or physically *dependent* on their use." This language indicates, as the statute implies, that actual addiction may take the form of either physical or emotional dependence upon drugs. (*People* v. *Victor, supra,* at p. 304, fn. 17.) We doubt that the *Bruce* opinion was intended to change the test as formulated in *Victor.* In any event, the *Victor* and *Bruce* decisions indicate that the evidence presented here was at best no more than minimally adequate to support a finding that appellant was in imminent danger of addiction. But we need not pass upon the sufficiency of the evidence, other than to observe that a close question is presented, because of prejudicial errors in the court's instructions to the jury.

▅ The court's charge to the jury was not taken down by the reporter; however, proposed instructions submitted by the parties and delivered by the court are included in the clerk's transcript. One of these instructions[3] apparently represents

---

[3] "The question to be determined by the jury in this case is whether or not *Mark Everette Wilson* is a Narcotic Drug Addict, or by means of repeated use of narcotics is in imminent danger of becoming addicted.

"The law of this State defines the term Narcotic Drug Addict as follows: Any person whether adult or minor who is addicted to the unlawful use of any narcotic (3009 Welfare and Institutions Code). *Heroin* is a narcotic within the meaning of Division 10 of the Health and Safety Code.

"You are instructed that the term 'addicted to the unlawful use of any narcotic drug,' means one who has used the narcotic drug to such an extent that he possesses all three of the following characteristics:

"1. Emotional dependence; that is, he has become 'emotionally dependent' on the drug in the sense that he experiences a compulsive need to continue its use;

"2. Tolerance; that is, the phenomena by which successive doses of the

an all-purpose form prepared by the prosecutor's office for use in proceedings of this character. It seems to have been intended to cover all the major variations that are likely to be encountered in civil commitment proceedings. The second paragraph erred in appellant's favor in that it omitted codeine in referring to the applicable statutory definition of "narcotic." But the next paragraph inappropriately defined "tolerance" and "physical dependence" when there was not the slightest evidence that such conditions existed in this case. That language could not possibly be helpful to the jury and might well lead them into harmful speculation about matters that were not before them. The court then proceeded to advise the jury that they might "take into consideration previous convictions for narcotic addiction by *Mark Everette Wilson* and any other such offenses admitted and the frequency of these acts." There was no evidence of any "previous convictions for narcotic addiction." At best the jury would be baffled by the court's statement; at worst they might believe

---

same drugs require larger doses of the drug to produce the original effect, and;

"3. Physical dependence; that is, he has become physically dependent on the drug so as to suffer withdrawal symptoms if he is deprived of his dosage.

"By imminent danger of becoming addicted to narcotics is meant a state where there has been repeated use of narcotics, beyond the stage of mere experimentation, whereby the individual is on the verge of acquiring physical tolerance, emotional and physical dependence on the narcotic.

"In deciding this issue it is proper for the jury to take into consideration previous convictions for narcotic addiction by *Mark Everette Wilson*, and any other such offenses admitted and the frequency of these acts.

"You are further instructed that the purpose of the various statutes in the Welfare and Institutions Code that are concerned with Narcotic Addiction is not to punish an individual, but rather to set up a procedure in our courts whereby an individual, who is alleged to be a Narcotic Drug Addict or by reason of repeated use of narcotics is in imminent danger of becoming addicted, may have that matter determined in a court; and then if found to be a Narcotic Drug Addict, or in imminent danger of becoming addicted, the law sets up a system and procedure whereby he/she shall be properly treated in an authorized institution and where he/she will be retained until he/she has recovered from his/her addiction.

"Evidence has been received concerning previous hospitalization(s) of *Mark Everette Wilson* for narcotic addiction. In arriving at your verdict, it is proper for you to consider such hospitalization(s) as to the issue of whether or not *Mark Everette Wilson* is a Narcotic Drug Addict or is in imminent danger of becoming addicted.

"You are not to speculate on what treatment would be beneficial, or whether the treatment is to be administered. Your sole purpose is to decide whether or not *Mark Everette Wilson* is presently a Narcotic Drug Addict or by reason of repeated use of narcotics is in imminent danger of becoming addicted." (Italics indicate blanks filled in.)

that the court was informing them that such convictions had occurred. Finally the court declared, still reading from the "boiler plate" instruction: "Evidence has been received concerning previous hospitalization(s) of *Mark Everette Wilson* for narcotic addiction. In arriving at your verdict, it is proper for you to consider such hospitalization(s) as to the issue of whether or not *Mark Everette Wilson* is a Narcotic Drug Addict or is in imminent danger of becoming addicted." It is hard to conceive of a more prejudicial misstatement of the evidence: the court was led, through uncritical use of a form instruction, to declare erroneously to the jury the existence of previous hospitalizations for actual narcotic addiction in a case where the evidence was debatably sufficient to show imminent danger of future addiction. These unfortunate instructions may well have been decisive as the jury weighed appellant's earnest protestations that he had ceased experimenting with narcotics as against the disagreement between the medical examiners on the question of present emotional dependence.

The judge could well have used concrete and direct language defining the rather simple issues of fact which the case presented. He could even have summed up the evidence and related it to the issues in a brief analytical review. But the instructions actually given did not function as a vehicle of communication and enlightenment; instead they invited misunderstanding and error.

Form instructions derived either from such works as California Jury Instructions—Civil, or from the industry of counsel, can be of great value to the judge in preparing his charge to the jury, but it is a misuse of these resources to read to the jury a lengthy and confusing incantation made up of form instructions submitted by the parties. (*Guerra* v. *Handlery Hotels, Inc.* (1959) 53 Cal.2d 266, 272 [1 Cal.Rptr. 330, 347 P.2d 674]; see also Winslow, *The Instruction Ritual* (1962) 13 Hastings L.J. 456, 472.)

Appellant's briefs make no complaint concerning the instructions. It is not our function to search an appellate record for error but, particularly in a case involving a citizen's personal freedom, we are "at liberty to consider, and even to decide, a case upon any points that its proper disposition may seem to require whether taken by counsel or not." (*People* v. *Renchie* (1962) 201 Cal.App.2d 1, 7 [19 Cal.Rptr. 734].)

The order is reversed. Appeals from miscellaneous orders are dismissed.

Devine, P. J., and Rattigan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 28, 1968.