[Crim. No. 4677. Fifth Dist. May 7, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN CARRASCO, Defendant and Appellant.

COUNSEL

Allen R. Crown, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney

General, W. Scott Thorpe, Eddie T. Keller and Janice Rogers Brown, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ANDREEN, J.—Appeal from a judgment of conviction of violation of Penal Code section 4573.6 (unauthorized possession of drugs in a penal institution). Reversed.

The defendant, an inmate in a county "road camp," returned from work furlough, changed his clothes, and went to the bathroom area whereupon he was approached by a correctional officer who demanded that he unbuckle his top pants button and open the flap of his trousers. When the defendant complied, a plastic baggie carrying a balloon was found between his pants and shorts. The balloon contained heroin.

The defense was that the correctional officer was on a vendetta against the defendant and that defendant did not possess any heroin. A doctor's report, submitted by stipulation, stated that the defendant was not a heroin addict and did not show signs of heroin use as of August 27, 1979, nor was there evidence of old pigmented injection sites.

DISCOVERY ORDER

Defendant contends that his motion to dismiss for failure of the People to comply with a discovery order should have been granted.

Although the discovery order is not before us, it may be inferred that it was issued after the information was filed. Seven days after the filing of the information (on Sept. 11, 1979), defense counsel Sanders requested to view the pants and shorts that defendant wore on July 12, 1979. The prosecution attempted to comply with the request, but found that inmate clothing was washed on a regular basis and was not available. While the record does not establish when the clothing was removed and washed, it may be inferred that this occurred long before the filing of the information, the discovery order, and Sanders' request. Compliance with this particular aspect of the discovery order was thus impossible. It follows that no violation occurred.

As to the shorts, the evidence shows that these were appellant's personal property and presumably were not washed and recycled for other road camp prisoners. The defense failed to show that these shorts were ever within law enforcement custody and/or had been lost or destroyed because of law enforcement action or inaction.

The defense raises two other theories, first, that the prosecution suppressed substantial material evidence favorable to the defense (*People* v. *Ruthford* (1975) 14 Cal.3d 399 [121 Cal.Rptr. 261, 534 P.2d 1341]); and second, that the prosecution failed to preserve evidence which might have been favorable to the defense (*People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361]). These theories are not based on a specific court order but due process.

To the extent appellant relies on *Hitch* and *Ruthford*, he failed to argue either theory below and has waived any appellate contention. Case law requires that a *Hitch* contention be raised in the trial court to be cognizable on appeal. (*People* v. *Burciago* (1978) 81 Cal.App.3d 151, 169-170 [146 Cal.Rptr. 236]; *People* v. *Smith* (1977) 70 Cal.App.3d 306, 318 [138 Cal.Rptr. 783].) By analogy, waiver applies as well to the *Ruthford* argument (cf. *People* v. *Burciago, supra*, 81 Cal.App.3d at pp. 169-170); furthermore, nothing in the record, as discussed above, supports a claim that the prosecution failed to disclose any evidence favorable to appellant prior to or during trial. A careful review of the pertinent record shows that the motion to dismiss was couched solely in terms of a violation of a specific discovery order.

While a finding of waiver may appear hypertechnical, fairness to the prosecution and the trial court requires that *Hitch* be raised below. The prosecution should have a chance to argue that the subject evidence was not material and/or to show that the government had established, enforced and attempted in good faith to adhere to rigorous and systematic procedures to preserve the evidence. (*People* v. *Hitch, supra*, 12 Cal.3d at pp. 652-655.) The trial court should have a chance to rule on the specific theory on which it later may suffer appellate reversal.

Finally, we fail to see how the absence of the clothing at trial prejudiced defendant. The baggie was about the size of a quarter. Presumably, the jurors have had adequate experience to determine whether it is possible to hide a package the size of a quarter between inner and outer garments.

## INSTRUCTIONAL ERROR

Defendant contends that the trial court failed to instruct as to three elements of possession under section 4573.6: knowledge of the presence of the substance; knowledge of its nature; and presence of a usable amount. The People contend that the latter two are not elements of 4573.6 possession and, alternatively, that any erroneous omission was harmless.

### A. ORDER OF INSTRUCTIONS

While searching the record to determine if there has been instructional error, we noted a problem regarding instructional sequence. Since it is inextricably entwined in the contention that there was instructional error for failure to instruct on the issues of knowledge and of usable quantity, we deem it appropriate to address the issue. (*People v. Renchie* (1962) 201 Cal.App.2d 1, 7 [19 Cal.Rptr. 734]; *People v. Wilson* (1968) 258 Cal.App.2d 578, 585 [65 Cal.Rptr. 839]; *Stevenson v. Turner* (1979) 94 Cal.App.3d 315, 318-319 [156 Cal.Rptr. 499].)

Penal Code section 4573.6, in pertinent part, provides: "Any person *who knowingly has* in his possession in ... any county ... road camp, ... any narcotics, ... without being authorized to so possess the same by the rules of the ... camp, ... or by the specific authorization of the ... person in charge of the ... camp, ... is guilty of a felony." (Italics added.)

The statute was enacted in 1949. In 1970 it was amended by deleting the word "having" and inserting in its place the words "who knowingly has" as emphasized above.

The trial court instructed the jury that "Every person who has in his possession without authorization a controlled substance while in the Tulare County Correctional Center is guilty of a felony," and "Heroin is a controlled substance."

Earlier, the trial court instructed in the language of CALJIC Nos. 1.21 ("KNOWINGLY"—DEFINED) and then 1.24 ("POSSESSION"—DEFINED) as set forth in the margin.[1]

---

[1]"[CALJIC No. 1.21] The word 'knowingly,' as used in these instructions, imports only a knowledge of the existence of the facts in question, when those facts are such as

CALJIC Nos. 1.21 and 1.24 were separated by no less than 11 instructions from the instructions which defined the crime. After CAL-JIC No. 1.21 ("KNOWINGLY"—DEFINED) and CALJIC No. 1.24 ("POSSESSION"—DEFINED), there follows: CALJIC No. 2.00 (DIRECT AND CIRCUMSTANTIAL EVIDENCE—INFERENCES); CALJIC No. 2.01 (SUFFICIENCY OF CIRCUMSTANTIAL EVIDENCE—GENERALLY; CALJIC No. 2.20 (CREDIBILITY OF WITNESS); CALJIC No. 2.21(1) (WITNESS WILFULLY FALSE—DISCREPANCIES IN TESTIMONY); CALJIC No. 2.22 (WEIGHING CONFLICTING TESTIMONY); CALJIC No. 2.27 (SUFFICIENCY OF TESTIMONY OF ONE WITNESS); CALJIC No. 2.80 (EXPERT TESTIMONY); CALJIC No. 2.90 (PRESUMPTION OF INNOCENCE—REASONABLE DOUBT—BURDEN OF PROOF); CALJIC No. 3.30 (CONCURRENCE OF ACT AND GENERAL CRIMINAL INTENT); DEFENDANT'S REQUESTED JURY INSTRUCTION No. 2; and CALJIC No. 3.34 (HOW INTENT IS SHOWN). Then followed the two instructions which attempted to define the crime (set out above).

■ The general rule is that the order in which instructions are given is immaterial. (18 Cal.Jur.3d, Criminal Law, § 876, p. 587; 23a C.J.S., Criminal Law, § 1302, p. 737.) There has even been the suggestion that whether the first or last instruction makes the greater impression "'borders on the realm of psychology wherein the law seems loath to enter.'" (*Ritchey* v. *Watson* (1928) 204 Cal. 387, 390 [268 P. 345], quoting *Grillich* v. *Weinshenk* (1923) 64 Cal.App. 474, 481 [222 P. 160].)

"The sequence in which instructions are given is a matter in the sound discretion of the trial court, and a very strong showing of prejudice must be made before a reviewing court will hold its discretion abused." (*Nungaray* v. *Pleasant Valley etc. Assn.* (1956) 142 Cal.App. 2d 653, 661-662 [300 P.2d 285].) But see *People* v. *Ford* (1964) 60 Cal.2d 772, 793 [36 Cal.Rptr. 620, 388 P.2d 892], where the court stated: "Defendant's remaining contentions on the nonhomicide counts have

bring the act or omission within the provision of the law. The word does not require in its meaning any knowledge of the unlawfulness of such acts or omission. [A requirement of knowledge does not mean that the act must be done with any specific intent.]"

"[CALJIC No. 1.24] The law recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over a thing is then in actual possession of it.

"A person who, although not in actual possession, knowingly has the right of control over a thing, either directly or through another person or persons, is then in constructive possession of it.

"The law recognizes that one person may have possession alone, or that two or more persons jointly may share actual or constructive possession."

been examined and are so devoid of merit as to require no particular discussion. For example, he contends that in a number of instances instructions that were otherwise admittedly correct were given in such a sequence as to mislead or confuse the jury; but a reading of all the instructions demonstrates that no such confusion was reasonably possible. . . . " This is a recognition of the obvious fact that the sequence of instructions can, in some instances, result in confusion. However, no guidance is given as to when such confusion is so serious as to mandate a reversal.

Chief Judge Devitt of the United States District Court, District of Minnesota, in an address entitled "Ten Practical Suggestions About Federal Jury Instructions" delivered at the Tenth Circuit Judicial Conference held July 9, 1965, as reported in 38 F.R.D. 75, 77, stated: "7. *Instructions Should be Given in Logical Sequence* [¶] Sometimes a judge's instructions sound like a talking crazy-quilt as he jumps from one subject to another and back again with utter abandon. This is most confusing to jurors. The instructions should be arranged in a logical sequence so that the whole will be intelligible to the jury. Symmetry is as necessary to legal exposition for easy understanding as it is to any other form of literary exposition."

Instructions should be intelligible. In order for the jurors to learn that the defendant must have *knowingly* had possession of heroin, they would have had to remember that the fourth instruction told them that the defendant had to have "knowledge of the existence of the facts in question." They would have had to recall from the fifth instruction that actual possession may be inferred from "knowingly having direct physical control over a thing" (both inaccurate statements of the law as they apply to this case). The jurors would then have had to interpret those instructions in the context of the 17th instruction which stated that "Every person who has in his possession without authorization a controlled substance while in the Tulare County Correctional Center is guilty of a felony."

This is expecting far too much of the average juror, or even an exceptionally intelligent one. It is unreasonable to expect a juror to imagine that the word "possession" as used in the 17th instruction required any sort of knowledge.

The only apparent rationale underlying the order of instructions is that, with the exception of four special instructions which were inter-

spersed willy-nilly with the others, all instructions are in numerical order. This might commend itself to a mathematician, but few others. The editors of CALJIC surely never intended such a ritualistic use of their system of numeration. We note that in the use note to BAJI (6th ed.) at page XIII the editors state: "The instructions have been arranged in the order usual for the trial of a damage action." No indication is made in CALJIC that the instructions were sequenced with an analogous intent as to criminal trials. The editors of CALJIC could not have meant to sequence the instructions so as to relieve the court of all initiative and responsibility. (See generally, *Werkman* v. *Howard Zink Corp.* (1950) 97 Cal.App.2d 418, 428 [218 P.2d 43] (conc. opn. of Shinn, P. J.).)

"It cannot be overemphasized that instructions should be clear and simple in order to avoid misleading the jury." (*Guerra* v. *Handlery Hotels, Inc.* (1959) 53 Cal.2d 266, 272 [1 Cal.Rptr. 330, 347 P.2d 674].) "Form instructions . . . can be of great value to the judge in preparing his charge to the jury, but it is a misuse of these resources to read to the jury a lengthy and confusing incantation made up of form instructions submitted by the parties. [Citations.]" (*People* v. *Wilson* (1968) 258 Cal.App.2d 578, 585 [65 Cal.Rptr. 839].)

Although the order in which the instructions were given would try the reasoning ability and memory of the most intelligent juror, we do not reverse on that ground. The matter was not raised on appeal (*ibid.*), and, as noted above, there is scant precedent for reversal on that basis.

Aside from the casual consecution of the instructions, they did not inform the jury that possession required knowledge of the nature of the substance possessed.

### B. DUAL POSSESSION ELEMENTS

Possession within the meaning of the relevant Health and Safety Code sections includes the elements that the defendant know of the presence of the substance and, additionally, know the character of the substance possessed. (*People* v. *Williams* (1971) 5 Cal.3d 211, 215 [95 Cal.Rptr. 530, 485 P.2d 1146]; 2 Witkin, Cal. Crimes, §§ 686-692; CALJIC No. 12.00.) The question arises whether possession within the meaning of Penal Code section 4573.6 includes the same dual knowledge elements.

A cardinal principle of statutory construction is that the Legislature is presumed to be aware of existing judicial practices and interpretations when it enacts a statute. (*Estate of McDill* (1975) 14 Cal.3d 831, 839 [122 Cal.Rptr. 754, 537 P.2d 874].) ▆ A review of the case law under analogous Health and Safety Code provisions shows that probably as of 1949 and certainly as of 1970, the case law was clear that possession included the dual knowledge elements, knowledge of the presence and nature of the substance.

As Witkin notes: "Some of the earlier cases took the extreme position that the statute did not call for any mental element, and that proof of possession of a prohibited substance was enough, despite ignorance of its narcotic character. (See, e.g., *People* v. *Randolph* (1933) 133 Cal. App. 192, 196 . . .; *People* v. *Sweeney* (1944) 66 Cal.App.2d 855, 859, . . .) This view has been repudiated, and the cases now make it clear that, in applying statutes dealing with prohibited possession, two kinds of knowledge are requisite and must be proved by the prosecution: (1) Knowledge of the fact of possession, and (2) knowledge of the character of the thing possessed. [Citations.] . . ." (2 Witkin, Cal. Crimes, Dual Requirement of Knowledge, § 689, pp. 632-633.)

The watershed case was *People* v. *Winston* (1956) 46 Cal.2d 151 [293 P.2d 40], where the Supreme Court held that marijuana possession required knowledge of the "narcotic character" of the thing possessed. The court held that instruction per former CALJIC No. 703—apparent predecessor of CALJIC No. 1.24 which was given in the instant case—"was not sufficient for it did not include the essential element of knowledge of the narcotic character of the particular object possessed." (*Id.*, at p. 158.) The court reasoned: "While specific intent to violate the law is immaterial to a conviction for the unlawful possession of a narcotic, knowledge of the object's narcotic character—that is, 'knowledge that the facts exist which bring the act . . . within the provisions of [the] code '—is required. (*People* v. *Gory* (1946), 28 Cal.2d 450, 456 . . .; see also *People* v. *Cole* (1952), 113 Cal.App.2d 253, 258 . . .; *People* v. *Barnett* (1953), 118 Cal.App.2d 336, 339 . . .; *People* v. *Rice* (1954), 123 Cal.App.2d 124, 125 . . .; *People* v. *Tennyson* (1954), 127 Cal.App.2d 243, 245-246 . . .; *People* v. *Candiotto* (1954), 128 Cal.App.2d 347, 351-353 . . .; *People* v. *Perez* (1954), 128 Cal.App.2d 750, 759 . . .; *People* v. *MacCagnan* (1954), 129 Cal.App.2d 100, 107-110 . . . .)" (*Id.*, at pp. 158-159.)

The *Winston* court rejected the argument that *People* v. *Gory, supra*, 28 Cal.2d 450, a *1946* case, should not be construed as requiring such knowledge: "While the Gory case, on its particular facts, did not require such precise holding to justify reversal of the judgment, such concept of knowledge is implicit in the discussion of the basic principles involved.... [¶] Respondent argues that mere conscious possession of an object, not knowing its true character as a narcotic but honestly believing it to be an innocuous article, nevertheless comes within the purview of the narcotic possession law. To this point this language from the Gory case is cited, pages 455-456: 'The distinction which must be drawn ... is the distinction between (1) *knowledge of the character of the object and the unlawfulness of possession thereof* as embraced within the concept of a specific intent to violate the law, and (2) *knowledge of the presence of the object* as embraced within the concept of "physical control with the intent to exercise such control," which constitutes the "possession" denounced by the statute. It is "knowledge" in the first sense which is mentioned in the authorities as being immaterial but "knowledge" in the second sense is the essence of the offense.' This distinction was meant to point out the difference between defendant's possession of marijuana with knowledge that it was in disregard of the law and therefore indicating his specific intent to violate the law, and defendant's possession of marijuana knowing its nature but innocent that its possession constituted a violation of the law. Thus, it was further said in the Gory case at page 457: 'Here the principal fact relied upon by the prosecution is the finding of marijuana in defendant's unlocked box and because of the denial by defendant of knowledge of its presence there, it was the duty of the trial court, on proper instructions, to submit to the jury the question as to whether defendant had knowledge of the presence of marijuana.'" (*Id.*, at pp. 159-160; italics original.)

In 1970 the Legislature amended Penal Code section 4573.6 to add "knowingly," the precise term which the Supreme Court had interpreted in *Winston* to require the dual knowledge elements in a drug possession context. The conclusion is inescapable that at least as of the 1970 amendment, the Legislature is presumed to have engrafted the dual knowledge concept onto Penal Code section 4573.6.

Moreover, the purpose of Penal Code section 4573.6 can, contrary to respondent's argument, be achieved without dispensing with the dual knowledge elements. As respondent notes, for example, the evidence in

the instant case would have sufficed to prove possession within the comparable Health and Safety Code meaning.

The case law under Health and Safety Code provisions permits the use of circumstantial evidence to establish the dual knowledge elements. Thus, a person found in possession of secreted drugs or narcotics within a penal facility will be hard put to disprove either type of knowledge. (See 2 Witkin, Cal. Crimes, §§ 689-692, and cases cited therein.) Since this is true, the dual knowledge requirement would not, as respondent complains, render Penal Code section 4573.6 singularly ineffective.

In sum, principles of statutory construction and legislative intent reveal that the dual knowledge requirement is part of Penal Code section 4573.6 possession.

Volume 63 Opinions of the California Attorney General 282 (1980) concludes that an inmate who possesses drugs or alcohol at the place of his work furlough employment does not violate Penal Code section 4573.6. Further, that the presence of an injected intoxicant in the system of an inmate who returns from work furlough employment under the influence of alcohol or drugs does not indicate possession under that section.

Central to the opinion's analysis of the second point is the premise that Penal Code section 4573.6 possession includes the standard Health and Safety Code elements. (63 Ops.Cal.Atty.Gen., *supra*, at p. 288.) The opinion is discussed further below. For here, it suffices to note that the Attorney General clearly espouses the view that the standard elements apply.

The jurors should have been instructed in language incorporating elements 2 and 3 of standard instructions used in contraband possession cases.[2]

---

[2]CALJIC No. 12.00 (CONTROLLED SUBSTANCE—ILLEGAL POSSESSION) provides: "[Defendant is charged in [Count __ of] the information, with the commission of the crime of illegal possession of a controlled substance, a violation of Section __ of the Health and Safety Code.]

"Every person who unlawfully possesses any controlled substance, such as __, is guilty of the crime of illegal possession of a controlled substance.

"In order to prove the commission of such crime, each of the following elements must be proved:

"1. That a person unlawfully exercised control or had the right to exercise control

## C. USABLE AMOUNT

Possession within the meaning of the relevant Health and Safety Code sections includes as an element that the substance be in a usable amount. (*People* v. *Leal* (1966) 64 Cal.2d 504, 512 [50 Cal.Rptr. 777, 413 P.2d 665]; 2 Witkin, Cal. Crimes (1978 supp.) §§ 675, 685, 704; CALJIC No. 12.00.) The question arises whether possession within the meaning of Penal Code section 4573.6 includes the same element.

■■■ A review of legislative intent and a pertinent Attorney General opinion shows that the usable quantity element is part of Penal Code section 4573.6 possession.

The pertinent rules regarding legislative intent have been cited above and need not be repeated here. The usable quantity requirement has been a well known element of Health and Safety Code possession offenses since at least 1966, when the Supreme Court decided *Leal, supra.* The Legislature presumably was aware of the usable quantity doctrine well before 1970, when it amended Penal Code section 4573.6 to insert "knowingly." (*Estate of McDill, supra,* 14 Cal.3d 831, 839.)

In a broader sense, the Legislature's failure in 1949 and thereafter to provide a different definition of possession under Penal Code section 4573.6 supports an inference that it intended the elements of possession to be the same as under the Health and Safety Code sections. As case law flushed out the usable quantity element, it simply became part of the accepted definition of drug or narcotic possession and became engrafted onto Penal Code section 4573.6.

Furthermore, 63 Ops. Cal. Atty. Gen. 282, *supra,* states that usable quantity is an element of the offense of possession, then proceeds to ap-

---

over a certain controlled substance,

"2. That such person had knowledge of its presence,

"3. That such person had knowledge of its nature as a controlled substance, and

"4. That the substance was in an amount sufficient to be used as a controlled substance.

"The law recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over a thing is then in actual possession of it.

"A person who, although not in actual possession, knowingly has the right of control over a thing, either directly or through another person or persons, is then in constructive possession of it. [The law recognizes that one person may have possession alone, or that two or more persons jointly may share actual or constructive possession.]"

ply this very concept in concluding that an inmate who returns to jail from work furlough in an intoxicated condition does not possess the intoxicant within the meaning of Penal Code section 4573.6. The following discussion is pertinent: "The elements of the offense of unlawful possession of a restricted substance are dominion and control over it, in a quantity usable for consumption or sale, with knowledge of its presence and of its character. (*People* v. *Groom* (1964) 60 Cal.2d 694, 696; *People* v. *Redrick* (1961) 55 Cal.2d 282, 285.)" (63 Ops.Cal.Atty.Gen., *supra*, at p. 288.)

We conclude that element (4) of CALJIC 12.00 should have been incorporated into the instruction below.

The People contend that the prohibition of section 4573.6 of the Penal Code would be rendered ineffective if the statute is construed as we have done above, because then visitors, prison employees and inmates on work furlough could insulate themselves from prosecution or conviction by acting as a "blind mule"—a person who delivers packages, the contents of which are not known to him. We see no such danger. These elements may be established by circumstantial evidence and reasonable inferences to be drawn therefrom. (*Russell* v. *Superior Court* (1970) 12 Cal.App.3d 1114 [91 Cal.Rptr. 255].) It is not likely that a jury would accept the story of a convict who contended that he was smuggling a small balloon into a penal institution without knowledge of its contents.

Although the People argue that the jury necessarily rejected the defense version of the events, we find that the instructional error was prejudicial. The language of *People* v. *Haney* (1977) 75 Cal.App. 3d 308, 312-313 [142 Cal.Rptr. 186], is pertinent: "People assert the overwhelming factual evidence of Haney's guilt excuses lack of proper instructions as to the applicable law and therefore only 'nonreversible error' was committed. (*People* v. *Watson, supra*, 46 Cal.2d 818.) This reasoning leads, if followed to its logical conclusion, to the abandonment of all instructions. The jury here was left totally in the dark as to the nature of the intent required, the nature of the acts required to convict either of felony or misdemeanor false imprisonment. This is not due process. We conclude the trial court erred in not giving *sua sponte* those general principles of law which were necessary for the jury's proper consideration of the case. (*People* v. *Wilson*, 66 Cal.2d 749, 759 . . . .)"

The judgment is reversed.

Zenovich, J., concurred in the judgment.

**HOPPER, Acting P. J.—** ▮▮▮ I concur in the reasoning and result of the principal opinion insofar as it reverses the judgment because the trial court failed to instruct as to all of the elements of the crime. ▮▮ I also concur in the reasoning and discussion under the heading "DISCOVERY ORDER." However, the matter of order of instructions was not raised by the parties and discussion thereof is unnecessary to the disposition of this case. Therefore, I leave to a more appropriate time consideration of the issue of "ORDER OF INSTRUCTIONS" and I do not concur in the principal opinion with respect to such subject.