Filed 10/10/22  P. v. Castro CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SIMON CHAVEZ CASTRO,<br><br>    Defendant and Appellant. | F080267<br><br>(Kern Super. Ct. No. LF011885A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Charles R. Brehmer, Judge.

Richard M. Oberto, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, and Cavan M. Cox II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant and defendant Simon Chavez Castro pulled a knife on officers and slashed at them. A struggle ensued, defendant resisted arrest, and he was ultimately taken into custody. When he was booked at the jail, he was found in possession of methamphetamine. He was charged with three counts each of attempted murder, assault with a deadly weapon, felony resisting committed against three officers, and a single count of possession of a controlled substance in jail. In closing argument, defense counsel conceded defendant's guilt of possession of a controlled substance in jail but challenged the evidence in support of the other charges. After a jury trial, defendant was convicted of two counts of assault with a deadly weapon, three counts of felony resisting, and one count of possession of a controlled substance in jail. The jury was unable to reach verdicts on three counts of attempted murder and one count of assault with a deadly weapon. Defendant was sentenced to six years four months in prison.

On appeal, defendant contends that his conviction in count 10 for possession of a controlled substance in jail must be reversed because the jury was not instructed on an alleged element of the offense, that the prosecution had to prove defendant knew he was entering a jail when he was in possession of the methamphetamine, and the alleged instructional error was prejudicial. Defendant acknowledges that defense counsel did not raise this objection at trial and conceded his guilt on this offense, but argues counsel was prejudicially ineffective for doing so.

Defendant further argues the matter must be remanded for the court to reconsider his sentence because of subsequently enacted amendments to Penal Code[1] section 654; the People concede this point.

We affirm defendant's convictions but remand the matter for reconsideration of his sentence.

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

2.

## FACTS

Defendant lived in a house in Arvin. Raul Arreguin (Arreguin) and his partner lived in the house next to defendant. On April 19, 2018, they saw defendant going in and out of his house and shouting threats that he wanted to kill everyone on the block before he got kicked out of his house. Arreguin saw a knife in defendant's waistband. Arreguin knew about past incidents where defendant used a hammer to destroy the inside of his house and also knew he used drugs. Arreguin thought defendant was acting like he was on something and decided to call 911.

**Arrival of Officers**

Around 7:00 p.m. on April 19, 2018, Sergeant Gonzalez, Officer Archuleta, and Officer Barker of the Arvin Police Department responded to defendant's residence on the dispatch that a person was under the influence, armed with a large kitchen knife, vandalizing his home with a hammer, and saying he would murder everyone before he lost his house. The three officers were in uniform and carrying sidearms; they arrived in marked patrol vehicles.

Sergeant Gonzalez and Officer Archuleta were the first officers to arrive. As they approached the house, Gonzalez drew his gun and held it low, and Archuleta held his Taser, since the dispatch stated that someone inside was armed.

Sergeant Gonzalez noticed the front door did not have a knob and was only secured by a deadbolt. He knocked on the front door and announced, "Arvin Police Department" in both English and Spanish several times, but no one answered. Both Gonzalez and Archuleta heard sounds from inside the house alerting them that someone was inside. Gonzalez thought he heard metallic sounds and believed someone was "either jimmying or messing with the dead bolt or the door handle," but the door remained closed.

3.

**Initial Contact with Defendant**

Sergeant Gonzalez again knocked and announced himself. The door started to open, and Gonzalez stepped back. A man, later identified as defendant, stepped forward. Defendant was holding a remote control and a bamboo stick. He appeared confrontational and immediately asked the officers in Spanish why they were there.

Sergeant Gonzalez responded to defendant in Spanish, saying they had received a report that someone was in the house, had a knife, and was trying to kill someone, and they wanted to make sure everybody was okay. Defendant said everyone was fine.

Sergeant Gonzalez testified that when defendant walked out of the house, he recognized defendant from a prior unrelated contact in November 2017, when he encountered defendant in the lobby of the Arvin Police Department. Defendant had entered the lobby and asked for an officer so he could file a theft report. Gonzalez happened to be present, spoke to defendant in Spanish, and asked if he needed help. They had a normal conversation at that time about defendant's report.

As Sergeant Gonzalez stood outside defendant's house on April 19, 2022, he told defendant, " 'Hey, I remember you. I spoke to you at the police department.' " Defendant indicated he also recognized Gonzalez, his demeanor changed, and he appeared to calm down because "he called me hijo, which means like son. And he was like 'que paso, hijo?' Like he asked me what's going on, son?"

Sergeant Gonzalez asked defendant what was going on. Defendant said he did not know and again asked why they were there. Gonzalez asked if everything was fine, and defendant said yes. Gonzalez asked if anyone was inside, and defendant said no. Gonzalez asked defendant to walk away from the door so they could talk to him.

Defendant complied and walked away from the house. Sergeant Gonzalez returned his firearm into his holster because defendant did not appear to be a threat. Gonzalez asked defendant if they could search him for weapons, and defendant agreed.

4.

Gonzalez asked defendant to drop the remote control and the bamboo stick, and he complied. Gonzalez asked if he had any guns or knives on him, and defendant said no.

Sergeant Gonzalez asked defendant to place his hands behind his head. Defendant raised both hands to the level of his forehead but failed to lock his fingers together.

Sergeant Gonzalez asked defendant to interlock his fingers behind his head and demonstrated what he wanted defendant to do. Defendant refused and asked, "For what?" Gonzalez repeated the request and reminded defendant that he agreed to be searched. Defendant said to go ahead and search him.

**Defendant Pulls the Knife**

Sergeant Gonzalez was standing on defendant's right side, Officer Archuleta was on defendant's left side, and they approached him to conduct the search. Archuleta returned his Taser to his holster so he could search defendant and reached for defendant's hand.

Defendant suddenly dropped his right hand behind his back, and in a fast movement, he pulled a large kitchen knife from his waistband with his right hand and swung it at both officers. Sergeant Gonzalez was within an arm's length of the blade. Officer Archuleta was shocked because defendant had been compliant.

Sergeant Gonzalez testified that defendant's right arm was fully extended, and his right hand was near the serrated part of the knife. Defendant appeared to aim for the area between Gonzalez's shoulder and his head. Gonzalez raised both of his arms and blocked defendant's swing. Officer Archuleta testified that defendant looked right at him and slashed at his face with the knife in a violent manner. Gonzalez grabbed defendant's right wrist and hand in an attempt to gain control over him. Defendant tried to pull away from Gonzalez and was yelling that he would kill Gonzalez, and that he would also kill both officers.

Officer Archuleta testified that he threw punches at defendant so he would drop the knife, but defendant held onto the weapon.

5.

Defendant backed up against his house.  Sergeant Gonzalez used both his hands, pinned defendant's right arm against a stucco pillar, and told him to drop the knife.  Defendant held onto the knife and continued to yell that he was going to kill him.  Gonzalez kept one hand on defendant's right wrist, and "socked him one time in his face" with his other hand, to get defendant to drop the knife.  Defendant became even more angry, held onto the knife, kept fighting, and again screamed he was going to kill them.

Officer Barker had arrived at the scene when Sergeant Gonzalez and Officer Archuleta were initially speaking to defendant.  Barker saw Archuleta reach for defendant's hand, and defendant pull out the knife with his right hand.  Barker testified that defendant made a slashing motion at Archuleta, who moved out of the way.  Barker moved in and reached for defendant's left hand as Gonzalez grabbed defendant's right hand.

As the struggle continued, defendant still held the knife in his right hand, and reached over with his left hand to grab the knife's blade.  Sergeant Gonzalez pulled away from defendant, and part of the blade broke into defendant's left hand.  There was still a small part of the blade attached to the handle.  Defendant continued to hold the knife's handle with his right hand, and the blade fell to the ground.

Sergeant Gonzalez tried to maintain control of defendant's right hand and hit defendant's left wrist.  Officer Barker grabbed defendant's left hand, and the three officers forced defendant to the ground on his back.  Defendant tried to stab Gonzalez in the face.  Defendant spit at the officers and kicked Barker in the chest with both feet.

Sergeant Gonzalez testified that he repeatedly told defendant in Spanish to drop the knife during the struggle. Officers Barker and Archuleta gave the same commands in English.  Defendant again tried to stab Gonzalez in the face.  Gonzalez hit defendant repeatedly in the head and rib cage, got on top of defendant, and slammed his wrist into the ground.  Barker hit defendant on the side of his head.  Defendant continued to kick,

6.

yell, and spit at them, and said he would kill them. Defendant rolled away from Gonzalez, kicked Barker, and swung the knife at him.

The officers pinned defendant on the ground, and finally gained control of defendant and the knife. Defendant continued to resist as the officers placed him in handcuffs.

Additional officers arrived and determined no one else was in the house. The knife was recovered; the handle was six inches, and the blade was seven and a half inches. There was tape around the handle that held the blade in place until it broke off. The blade was serrated and sharp.[2]

**Treatment of Injuries**

After defendant was restrained, Sergeant Gonzalez told him, " 'The fight is over already. Get in the vehicle. You're going to jail.' " Defendant continued to curse the officers in Spanish, and he spit and kicked as they escorted him to a patrol car. Gonzalez believed defendant's behavior was consistent with being under the influence of methamphetamine or cocaine. Defendant finally stopped spitting and kicking when he was placed in the backseat of a patrol car.

Defendant was bleeding from his nose, mouth, and hands. He had cuts on his hand from grabbing the blade, and knots on top of his head and above his right eyebrow from the struggle.

An ambulance arrived at the scene and medical personnel were going to treat defendant. Sergeant Gonzalez opened the door to the patrol car, asked defendant if he was okay, and defendant said yes. "He was talking just fine then. I said, 'Stop spitting on them so they can treat your hand. Is that all right?' He said it was. He stepped out of

---

[2] Mr. Arreguin, defendant's neighbor, testified that he was standing outside and saw the officers arrive at defendant's house. He saw defendant walk out of the house and talk to the officers. He also saw defendant pull out the knife, slash at the officers, and the ensuing struggle, and heard defendant threaten the officers.

the vehicle. I was standing with him when they started treating his injuries." Gonzalez watched as they cleaned defendant's hand wound; defendant did not spit or kick at them.

Sergeant Gonzalez testified that the medical personnel wanted to move defendant to the ambulance and transport him to the hospital. Gonzalez and two other officers walked defendant to the gurney. Gonzalez "explained to him, '[T]he fight is already over. We'll sit you in the gurney so they can treat you. Is that okay? I'm going to release your handcuff' because he was still handcuffed to the rear. [¶] His hands were behind his back. I told him, 'We're going to release the handcuffs. I'll sit you on the gurney so don't fight anymore, okay?' " Gonzalez testified that defendant agreed, he complied with instructions and got on the gurney, and he was handcuffed to the gurney and placed in the ambulance.

Defendant was transported by ambulance to the hospital. Officer Archuleta rode in the ambulance with defendant, and Officer Barker followed in his patrol vehicle. Sergeant Gonzalez did not go to the hospital with defendant.

Officer Archuleta testified that during the ambulance ride, defendant was handcuffed to the gurney, and he "was just laying there with his eyes opened. … I don't remember him talking at all or saying anything. He was completely calm." When they arrived at the hospital, Archuleta and Officer Barker stayed with defendant while he received stitches for deep cuts on his fingers.

The officers also received treatment for their injuries. Sergeant Gonzalez was treated for cuts and scratches on his left index finger from hitting the stucco pillar, scrapes on his hands from the knife, and blood on his face. Officer Barker was bleeding from cuts and scrapes on his hand. Officer Archuleta's hand was bleeding, and he had a laceration on his finger.

**Search at the Jail (Count 10)**

Sometime around 10:30 p.m., defendant's treatment at the hospital was completed, and he was medically cleared to be taken to the Kern County Sheriff's Department's

Central Receiving Facility (CRF) for booking. The Arvin Police Department did not have a jail and booked arrestees into the CRF, that was part of the Kern County Jail and operated by the sheriff's department.

Officers Barker and Archuleta drove defendant from the hospital to the CRF in a marked patrol vehicle. Upon arrival at the jail, defendant was driven into the basement, and both officers escorted defendant to the door that led to the booking area.

The prosecution introduced a photograph that showed signs in English and Spanish posted outside the entrance to the booking area, that warned people not to bring certain items into the jail. The sign in English stated:

> "WARNING [¶] YOU ARE ENTERING A JAIL [¶] Anyone who knowingly brings into, [¶] sells, furnishes, or possesses [¶] any type of alcoholic beverage, drug, [¶] controlled substance, firearm, [p] deadly weapon, or other item useful to aid escape [¶] is guilty of a felony and may be punished [p] by incarceration in the state prison. [¶] California Penal Code 4535, 4573, 4573.5, 4573.6, 4573.8, 4573.9, 4574."

Officer Barker reviewed the photographs and identified the door as the entrance where he escorted defendant into the booking area. Barker believed the two signs were always posted next to that door, but he was not certain. Barker testified that the entrance doors were unlocked from inside, and then someone "buzzed" you into the booking area. Barker could not remember if he stopped to allow defendant to read the signs before they entered. Barker knew defendant could speak some English, but he did not know whether defendant could read English or Spanish.

Deputy De La Huerta of the sheriff's department was on duty at the booking office in the jail's basement on the night that defendant was brought in. He was responsible for searching suspects booked into custody, while another deputy asked the suspects for their names and identifying information.

> "Q. During this search, do you inform or tell anyone you're searching that they can't have anything that they're bringing into jail?

9.

"[De La Huerta].  Yes, as well as it's posted before entering the jail."  (Italics added.)

Deputy De La Huerta, who spoke Spanish, reviewed the prosecution's photographic exhibits that showed the English and Spanish language signs posted outside the door.  He testified that the English and Spanish signs shown in Exhibit No. 45 were the same signs posted outside the entrance door in April 2018.  He confirmed the Spanish language sign posted outside the jail's entrance door stated the same warning as the English language sign, that narcotics could not be brought into the jail.  De La Huerta believed the photograph that showed the entrance door (Exhibit No. 46) was taken before April 2018.  De La Huerta explained that a different entrance door to the booking area was used in April 2018, when defendant was booked, but testified that the bilingual warning signs were posted next to the door that was used in April 2018, and both signs stated the same warning as shown in the photographs.

Deputy De La Huerta testified that when defendant was brought into the jail, he searched defendant and found a small plastic baggy with a white powdery substance in the coin pocket of his pants.  It consisted of 0.0929 grams of methamphetamine, a usable amount.[3]

## PROCEDURAL BACKGROUND

On May 15, 2018, an information was filed in the Superior Court of Kern County charging defendant with committing the following offenses against, respectively, Sergeant Gonzalez, Officer Archuleta, and Officer Barker:  counts 1 through 3, attempted first degree premeditated murder of a person he knew or reasonably should have known was a peace officer engaged in the performance of his duties (§§ 664, subd. (e), 187,

---

[3] As will be explained, defendant was charged and convicted of count 10, possession of methamphetamine in a penal institution in violation of section 4573.6, based on this evidence; defense counsel conceded in closing argument that defendant was guilty of this offense.  On appeal, defendant asserts the court failed to instruct the jury on an alleged element of the offense, whether he knew he was entering a jail at the time he possessed the methamphetamine.

10.

subd. (a), § 189); counts 4 through 6, assault with a deadly weapon on person he knew or reasonably should have known was a peace officer engaged in the performance of his duties (§ 245, subd. (c)); and counts 7 through 9, attempting to deter or resist an executive officer by force, threat, or violence (§ 69). As to counts 1 through 3, and 7 through 9, it was further alleged defendant personally used a deadly weapon, a knife (§ 12022, subd. (b)(1)).

Defendant was also charged with count 10, possession of a controlled substance, methamphetamine, in a penal institution (§ 4573.6).[4]

**Instruction for Count 10**

As relevant to defendant's contentions in this appeal, the court discussed count 10 during the instructional conference and stated that it was going to give the People's proposed instruction of CALCRIM No. 2748 on the elements of the charged violation of section 4573.6, possession of a controlled substance in a penal institution. Defense counsel did not object to the instruction on count 10.

The court read CALCRIM No. 2748 to the jury on the elements of count 10, which stated:

> "The defendant is charged in Count 10 with possessing a controlled substance, alleged to be methamphetamine, in a penal institution in violation of … Section 4573.6.

> "To prove that the defendant is guilty of Count 10, the People must prove that: One, *the defendant possessed a controlled substance in a penal institution or on the grounds of a penal institution.* [¶] Two, the defendant knew of the controlled substance's presence. [¶] Three, the defendant knew of the substance's nature or character as a controlled substance. [¶] Four, the controlled substance was methamphetamine. [¶] Five, the controlled substance was a usable amount.

---

[4] As to count 10, the information alleged the controlled substance was cocaine. Prior to trial, the court granted the motion to correct the information by interlineation to allege the controlled substance was methamphetamine.

11.

"A penal institution is a county or city jail. A usable amount is a quantity that is enough to be used by someone as a controlled substance. Useless traces or debris are not usable amounts. On the other hand, a usable amount does not have the be enough in either amount or strength to affect the user. [¶] The People do not need to prove that the defendant knew which specific controlled substance he possessed. [¶] A person does not have to actually hold or touch something to possess it. It is enough if the person has control over it, either personally or through another person."[5] (Italics added.)

## Closing Arguments

As relevant to defendant's appellate contentions about count 10, the prosecutor addressed the charged offense of possession of a controlled substance in jail in closing argument as follows:

"The last count is possession of [a] controlled substance in jail. This is why we have the evidence about the jail search. Once the defendant was cleared by medical and they took him to the jail *and he went through the door with the sign saying don't bring any drugs into jail, the defendant had some methamphetamine in his pocket*. [¶] We heard from the criminalist. We heard from the officer that searched him. We heard from the officer that booked the evidence." (Italics added.)

The prosecutor reviewed the elements that defendant unlawfully possessed a controlled substance in a penal institution or on the grounds of a penal institution, the controlled substance was in his pocket, a penal institution included a city or county jail, the CRF was the county jail, and it qualified as a penal institution. The prosecutor argued the next element was whether defendant knew of the substance's presence, and "[c]ommon sense, circumstantial evidence tells us it was in his pocket. We also know that there were reports of him using methamphetamine," and the defense theory was that he was on methamphetamine at the time of his arrest. The prosecutor added, "I don't think this [count] is contested too much by defense."

---

[5] The court's instruction was virtually identical to the pattern version of CALCRIM No. 2748, which has been upheld as a correct statement of the elements of violating section 4573.6. (See, e.g., *People v. Wyatt* (2008) 165 Cal.App.4th 1592, 1602.)

In her closing argument, defense counsel extensively challenged the evidence as to all charges committed against the officers, and argued defendant was not guilty of attempted murder. However, counsel conceded the People met the burden to prove count 10.

> "What's not at issue is Count 10, possession of the methamphetamine at the jail. That's on your verdict form. That's page 31. That's the last page. You're going to go to that page and vote guilty because all of the elements were proven…. [¶] I'm conceding this because Deputy De La Huerta said yeah, I searched him and found the meth. Okay, there you go."

Defense counsel acknowledged that while Deputy De La Huerta testified that the jail was using a difference entrance to the booking area at the time of defendant's arrest, there were warning signs by the entrance doors that were used by defendant when he was escorted into the jail.

**Verdicts**

On October 1, 2019, after a jury trial, defendant was convicted of counts 4 and 5, assault with a deadly weapon on Sergeant Gonzalez and Officer Archuleta; counts 7 through 9, felony resisting Gonzalez, Archuleta, and Officer Barker, with the attached personal use enhancements found true; and count 10, possession of a controlled substance in jail.

The jury was unable to reach verdicts on counts 1 through 3, attempted murder of the three officers, and count 6, assault with a deadly weapon on Officer Barker. The court declared mistrials on those counts and later granted the prosecution's motion to dismiss these charges "contingent on the conviction and the sentencing remaining in full force and effect."

**Sentencing**

On October 30, 2019, the court sentenced defendant to an aggregate term of six years four months in prison as follows: the lower term of three years for count 4, assault with a deadly weapon on a peace officer, plus consecutive sentences (one-third the

13.

midterms) of 16 months for count 5, assault with a deadly weapon on a peace officer; eight months for count 9, felony resisting, with four months for the attached personal use enhancement; and one year for count 10, possession of a controlled substance.

The court sentenced defendant to 16 months for each of counts 7 and 8, felony resisting, plus one year for the attached personal use enhancements. The court stated the two counts were identical, and stayed the terms imposed pursuant to section 654 without making further findings.

The court imposed a $300 restitution fine (§ 1202.4, subd. (b)), stayed the parole revocation fine in the same amount (§ 1202.45), and ordered victim restitution in an amount to be determined (§ 1202.4, subd. (f)). It also imposed court operations assessments of $240 (§ 1465.8) and criminal conviction assessments of $180 (Gov. Code, § 70373).

On October 31, 2019, defendant filed a notice of appeal.

## DISCUSSION

### I.    Elements and Instruction for Count 10

In count 10, defendant was charged and convicted of knowing possession of a controlled substance within a penal institution in violation of section 4573.6, based on the methamphetamine found in his pocket during the booking search. "To prove a violation of section 4573.6, the prosecution ha[s] to show that defendant possessed methamphetamine in the jail; defendant knew he possessed the methamphetamine; defendant knew that the methamphetamine was a controlled substance; and that the methamphetamine was in a usable amount." (*People v. Berg* (2018) 23 Cal.App.5th 959, 964 (*Berg*).) As explained above, defense counsel conceded the People had met the burden of proof as to this count in closing argument.

On appeal, defendant contends his conviction in count 10 must be reversed because the court failed to instruct the jury on an alleged element of the offense – that the

14.

People were purportedly required to separately prove "that [defendant] knew he was in a penal institution or on the grounds of a penal institution."

In making this argument, defendant acknowledges that the word "knowingly," as used in section 4573.6, has never been interpreted to require the People to prove the perpetrator knew he was in a penal institution. Instead, defendant argues such an interpretation is supported by the legislative history of the 1970 amendment to section 4573.6.[6]

Defendant argues the court had a sua sponte duty to modify the pattern instruction to include this element, and the omission of this language from the instruction was prejudicial because the jury "could have concluded there was insufficient evidence that when the methamphetamine was seized from [defendant], he knew he had been taken from the hospital to a jail," there was no evidence defendant noticed the sign posted outside the entrance to the booking area, or he had the ability to read the English or Spanish warnings.

Defendant argues, to the extent defense counsel may have forfeited the issue or invited the error by failing to object to the instruction or conceding his guilt in closing argument, he was ineffective, and the error was prejudicial for the same reasons.

### A. *Section 4573.6*

We begin with the current provisions of section 4573.6, which consists of two subdivisions and states in full:

> "(a) *Any person who knowingly has in his or her possession* in any state prison, prison road camp, prison forestry camp, or other prison camp or prison farm or any place where prisoners of the state are located under

---

[6] While this appeal was pending, defendant requested this court to take judicial notice of the legislative history of the 1970 amendments to section 4573.6, as enacted by Stats. 1970, c. 848, §3 (1970 Reg. Session) (Sen. Bill No. 846). The People did not object.

We therefore grant defendant's request and take judicial notice of certain documents pertaining the legislative history, that he filed as exhibits to his judicial notice request.

the custody of prison officials, officers, or employees, *or in any county, city and county, or city jail*, road camp, farm, or any place or institution, where prisoners or inmates are being held under the custody of any sheriff, chief of police, peace officer, probation officer, or employees, or within the grounds belonging to any jail, road camp, farm, place or institution, *any controlled substances, the possession of which is prohibited by Division 10 (commencing with Section 11000) of the Health and Safety Code*, any device, contrivance, instrument, or paraphernalia intended to be used for unlawfully injecting or consuming controlled substances, without being authorized to so possess the same by the rules of the Department of Corrections, rules of the prison or jail, institution, camp, farm or place, or by the specific authorization of the warden, superintendent, jailer, or other person in charge of the prison, jail, institution, camp, farm or place, is guilty of a felony punishable by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years.

"(b) *The prohibitions and sanctions addressed in this section shall be clearly and prominently posted outside of, and at the entrance to, the grounds of all detention facilities under the jurisdiction of, or operated by, the state or any city, county, or city and county.*"  (Italics added.)

Section 4573.6 is "part of a larger [statutory] scheme regulating crimes in prison and jail …."  (*People v. Gastello* (2010) 49 Cal.4th 395, 397.)  "Section 4573.6 is related to, and to be construed together with … sections 4573 and 4573.5 [and other statutes], which prohibit bringing or sending drugs or drug paraphernalia into a prison or jail."  (*People v. Gutierrez* (1997) 52 Cal.App.4th 380, 386 (*Gutierrez*).)  "These statutes, which target the possession rather than the consumption of unauthorized drugs in prison, 'flow from the assumption that drugs … and other contraband promote disruptive and violent acts in custody, including gang involvement in the drug trade.  Hence, these provisions are viewed as " 'prophylactic' " measures that attack the " 'very presence' " of such items in the penal system.' "  (*People v. Raybon* (2021) 11 Cal.5th 1056, 1063; *People v. Low* (2010) 49 Cal.4th 372, 382, 388 (*Low*).)

"Possession under section 4573.6 requires that the state prove beyond a reasonable doubt the standard elements of possession found in the Health and Safety Code.  [Citation.]  Thus, the elements for a section 4573.6 violation are (1) unlawfully exercising control over a controlled substance, (2) having knowledge of the substance's presence,

16.

(3) having knowledge of the substance's nature as a controlled substance, and (4) possessing the substance in an amount sufficient to be used as a controlled substance." (*People v. Polk* (2019) 36 Cal.App.5th 340, 349; *Berg, supra,* 23 Cal.App.5th at p. 964.)

Section 4573.6 defines a general intent crime. (*Berg, supra*, 23 Cal.App.5th at p. 967.) The statute describes "a particular act – possession of a controlled substance in jail – without referring to any intent to do a further act." (*Ibid*.) Section 4573.6 "prohibits possession, not use; it is … concerned with the potential of the item in question." (*Gutierrez, supra*, 52 Cal.App.4th at pp. 386–387.) It does not require that the defendant have the specific intent to commit an act or scheme "*over and above* the knowledge component" stated in the statute. (*Low, supra*, 49 Cal.4th at p. 386.) "Presumably, the Legislature would have signaled whether a special intent to fulfill such an unlawful purpose or to cause some adverse effect bore on commission of the offense." (*Id*. at pp. 386–387.) Even assuming a defendant did not intend to use the drugs or paraphernalia in jail, "its mere presence in the jail pose[s] the threat that *some* prisoner *would* use it …." (*Gutierrez,* at p. 387.)

The lack of authorization is an affirmative defense. (*People v. George* (1994) 30 Cal.App.4th 262, 275.) As we will discuss below, the "posting requirement" stated in subdivision (b) is not an element of the substantive offense. (*Gutierrez, supra,* 52 Cal.App.4th at p. 389.)[7] A defendant's voluntary intoxication is not a defense to a charged violation of section 4573.6 since it states a general intent crime. (*Berg, supra*, 23 Cal.App.5th at pp. 967–968.)

---

**7** The California Supreme Court has clarified that the 2016 enactment of Proposition 64, which makes it lawful for persons aged 21 years and older to possess up to 28.5 grams of cannabis, has not nullified violations of section 4573.6 based on possession of cannabis in prison. (*People v. Raybon*, *supra*, 11 Cal.5th at p. 1060.)

## B.    *Enactment of Section 4573.6*

Defendant asserts that based on the 1970 amendment to section 4573.6, the People have the burden to prove an additional element to prove a violation of the statute that was not stated in the pattern instruction or previously held to be an element of the offense: that he knew he was entering or inside a jail when he possessed a controlled substance. In order to place defendant's arguments in context, we must review the statute's initial enactment and subsequent amendments.

Section 4573.6 was first enacted in 1949.  (*Gutierrez, supra,* 52 Cal.App.4th at p. 387.)  The original version of the statute stated:

> " '*Any person having in his possession* in any state prison, prison road camp, prison forestry camp, or other prison camp or prison farm or any place where prisoners of the State are located under the custody of prison officials, officers, or employees, or in any county, city and county or city jail, road camp, farm, or any place or institution, where prisoners or inmates are being held under the custody of any sheriff, chief of police, peace officer, probation officer, or employees, or within the grounds belonging to any such jail, road camp, farm, place or institution, *any narcotics, or drugs in any manner, shape, form, dispenser or container, or alcoholic beverage*, without being authorized to so possess the same by the rules of the Department of Corrections, rules of the prison or jail, institution, camp, farm or place, or by the specific authorization of the warden, superintendent, jailer or other person in charge of the prison, jail, institution, camp, farm or place, is guilty of a felony.' " (*People v. Ortiz* (1962) 200 Cal.App.2d 250, 252, italics added; *People v. Trout* (1955) 137 Cal.App.2d 794, 794–795.)

As originally enacted, section 4573.6 was defined as a "general statute" that was "operative upon 'any person' possessed of narcotics within the limits of the enumerated institutions, applying to visitors as well as inmates." (*People v. Clark* (1966) 241 Cal.App.2d 775, 778; *People v. Trout, supra*, 137 Cal.App.2d at p. 796.)

Prior to section 4573.6's enactment, the Legislature enacted section 4573 in 1941, "which made it a felony to bring into any custodial institution 'any narcotic, the possession of which is prohibited by Division 10' of the Health and Safety Code … [citation], *thus linking the law applying to custodial institutions to the nomenclature of*

18.

*the general criminal law of drugs*." (*People v. Spann* (1986) 187 Cal.App.3d 400, 405, italics added.) When section 4573.6 was enacted, it similarly used "terms which employ the definitions taken from the controlled substance laws." (*People v. Spann,* at p. 408.)

## C. *The 1970 Amendment and the "Dual Possession Elements"*

The original version of the statute enacted in 1949 began: " '*Any person having in his possession ....*' " (*People v. Ortiz, supra,* 200 Cal.App.2d at p. 252.) In 1970, the Legislature amended section 4573.6 for the first time, and deleted "the word 'having' and insert[ed] in its place the words '*who knowingly has*'…." (*People v. Carrasco* (1981) 118 Cal.App.3d 936, 941 (*Carrasco*), italics added; § 4573.6, Westlaw Historical and Statutory Notes.)

After the 1970 amendment, section 4573.6 stated in pertinent part:

> " 'Any person *who knowingly has* in his possession in … any county … road camp, … any narcotics, … without being authorized to so possess the same by the rules of the … camp, … or by the specific authorization of the … person in charge of the … camp, … is guilty of a felony.' " (*Carrasco, supra*, 118 Cal.App.3d at p. 941, italics added in original.)

### 1. Carrasco

In *Carrasco,* this court addressed the 1970 amendment to section 4573.6. In that case, the defendant was an inmate in a county road camp, returned from work furlough, changed his clothes, and was then searched and found in possession of heroin under his clothing. His defense was the searching officer had a vendetta against him, and he did not know the drugs were in his clothes. (*Carrasco, supra*, 118 Cal.App.3d at p. 939.)

The defendant was charged and convicted of violating section 4573.6, as amended in 1970. The trial court instructed the jury that " '[e]very person *who has in his possession* without authorization a controlled substance while in the Tulare County Correctional Center is guilty of a felony….' " (*Carrasco, supra*, 118 Cal.App.3d at p. 941, italics added.) The court separately instructed the jury with CALJIC No. 1.21, that " 'knowingly' … imports only a knowledge of the existence of the facts in question,

19.

when those facts are such as bring the act or omission within the provision of the law. The word does not require in its meaning any knowledge of the unlawfulness of such acts or omission."**8** (*Carrasco*, at pp. 941–942 & fn. 1 [A requirement of knowledge does not mean that the act must be done with any specific intent].) The court also gave CALJIC No. 1.24 about possession, that " '[t]he law recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over a thing is then in actual possession of it. [¶] 'A person who, although not in actual possession, knowingly has the right of control over a thing, either directly or through another person or persons, is then in constructive possession of it. [¶] 'The law recognizes that one person may have possession alone, or that two or more persons jointly may share actual or constructive possession.' " (*Carrasco*, at pp. 941–942, fn. 1.)

On appeal in *Carrasco*, the defendant argued that in light of the 1970 amendment that added "knowingly" to the statute, the trial court "failed to instruct as to three elements of possession under section 4573.6: *knowledge of the presence* of the substance; *knowledge of its nature*; and presence of a usable amount." (*Carrasco, supra*, 118 Cal.App.3d at p. 941, italics added.) The People asserted the latter two matters were not elements of the crime, and any instructional errors were harmless. (*Ibid*.)

*Carrasco* agreed with the defendant and held the jury should have been instructed on the "dual possession elements" of knowledge of both the narcotic nature and presence of the controlled substance. (*Carrasco, supra*, 118 Cal.App.3d at p. 947.) In reaching this holding, *Carrasco* began by noting that the definition of "possession," within the meaning of relevant Health and Safety Code sections prohibiting possession of narcotics, included "the elements that the defendant *know of the presence of the substance and, additionally, know the character of the substance possessed*. [Citations.] The question

---

**8** As will be discussed below, CALJIC No. 1.21's definition of "knowingly" is based on the definition stated in section 7, subdivision (5). (*People v. Gregory* (1990) 217 Cal.App.3d 665, 681.)

20.

arises whether possession within the meaning of … section 4573.6 includes the same dual knowledge elements." (*Id.* at p. 944, italics added.)

"A cardinal principle of statutory construction is that the Legislature is presumed to be aware of existing judicial practices and interpretations when it enacts a statute. [Citation.] A review of the case law under analogous Health and Safety Code provisions shows that probably as of 1949 and certainly as of 1970, *the case law was clear that possession included the dual knowledge elements, knowledge of the presence and nature of the substance.*

"As Witkin notes: 'Some of the earlier cases took the extreme position that the statute did not call for any mental element, and that proof of possession of a prohibited substance was enough, despite ignorance of its narcotic character. [Citations.] This view has been repudiated, and the cases now make it clear that, in applying statutes dealing with prohibited possession, two kinds of knowledge are requisite and must be proved by the prosecution: (1) Knowledge of the fact of possession, and (2) knowledge of the character of the thing possessed.' " (*Id.* at p. 945, italics added.)

*Carrasco* next reviewed previous interpretations of drug possession laws:

"The watershed case was *People v. Winston* (1956) 46 Cal.2d 151 … , where the Supreme Court held that marijuana possession required knowledge of the 'narcotic character' of the thing possessed. The court held that instruction per former CALJIC No. 703 – apparent predecessor of CALJIC No. 1.24 which was given in the instant case – 'was not sufficient for it did not include the essential element of knowledge of the narcotic character of the particular object possessed.' [Citation.] The court reasoned: 'While specific intent to violate the law is immaterial to a conviction for the unlawful possession of a narcotic, knowledge of the object's narcotic character – that is, "knowledge that the facts exist which bring the act … within the provisions of [the] code" – is required. [Citations.]' [Citation.]

"The *Winston* court rejected the argument that *People v. Gory* [(1946) 28 Cal.2d 450], a *1946* case, should not be construed as requiring such knowledge: 'While the *Gory* case, on its particular facts, did not require such precise holding to justify reversal of the judgment, such concept of knowledge is implicit in the discussion of the basic principles involved …. [¶] Respondent argues that mere conscious possession of an object, not knowing its true character as a narcotic but honestly believing it to be an innocuous article, nevertheless comes within the purview of the narcotic possession law. To this point this language from the *Gory* case is

21.

cited, pages 455 [through] 456: "The distinction which must be drawn … is the distinction between (1) *knowledge of the character of the object and the unlawfulness of possession thereof* as embraced within the concept of a specific intent to violate the law, and (2) *knowledge of the presence of the object* as embraced within the concept of 'physical control with the intent to exercise such control,' which constitutes the 'possession' denounced by the statute. It is 'knowledge' in the first sense which is mentioned in the authorities as being immaterial but 'knowledge' in the second sense is the essence of the offense." This distinction was meant to point out the difference between defendant's possession of marijuana with knowledge that it was in disregard of the law and therefore indicating his specific intent to violate the law, and defendant's possession of marijuana knowing its nature but innocent that its possession constituted a violation of the law. Thus, it was further said in the *Gory* case at page 457: "Here the principal fact relied upon by the prosecution is the finding of marijuana in defendant's unlocked box and because of the denial by defendant of knowledge of its presence there, it was the duty of the trial court, on proper instructions, to submit to the jury the question as to whether defendant had knowledge of the presence of marijuana." ' " (*Carrasco, supra*, 118 Cal.App.3d at p. 946, italics added in original.)

*Carrasco* then turned to the legislative intent for the 1970 amendment to section 4573.6:

"In 1970 the Legislature amended … section 4573.6 to add 'knowingly,' *the precise term* which the Supreme Court had interpreted in *Winston* to require the dual knowledge elements in a drug possession context. *The conclusion is inescapable that at least as of the 1970 amendment, the Legislature is presumed to have engrafted the dual knowledge concept onto … section 4573.6.*" (*Carrasco, supra*, 118 Cal.App.3d at p. 946, italics added.)

*Carrasco* thus concluded that "principles of statutory construction and legislative intent" established the 1970 amendment added "the dual knowledge requirement" as "part of … section 4573.6 possession," the court had a sua sponte duty to instruct the jury that the elements of the offense included knowledge of both the nature and presence of the controlled substance, and the instructions given to the jury were insufficient to address these elements. (*Carrasco, supra*, 118 Cal.App.3d at p. 947; *id*. at pp. 946, 949.) *Carrasco* further held the instructional errors were prejudicial because the jury, as it was

22.

instructed, " 'was left totally in the dark as to the nature of the intent required, the nature of the acts required to convict ….' "[9] (*Id.* at p. 949.)

### D. *The 1990 Amendment and the "Posting Requirement"*

In 1990, the Legislature again amended section 4573.6. It modified the existing first paragraph of section 4573.6 that defined the substantive offense, and substituted the phrase " 'the possession of which is prohibited by Division 10 (commencing with Section 11000) of the Health and Safety Code' for 'or drugs in any manner, shape, form, dispenser or container', deleted 'or drugs, or alcoholic beverage' preceding, 'without being authorized', added 'punishable by imprisonment in the state prison for two, three, or four years'…." (§ 4573.6, Westlaw Historical and Statutory Notes.) It did not otherwise amend the definition of the possession offense. (See, e.g., *People v. George*, *supra*, 30 Cal.App.4th at p. 274.)

The 1990 amendment also added a second paragraph to section 4573.6 that was described as a "posting requirement." (*Gutierrez, supra*, 52 Cal.App.4th at p. 389; Stats. 1990, c. 1580, § 4 (Sen. Bill No. 2683).) The same 1990 legislation also added posting requirements to similar statutes "which deal generally with bringing, sending or having drugs in prison or jail." (*Gutierrez,* at p. 389.)

In 2011, section 4573.6 was amended to designate the two paragraphs as subdivisions, without substantive changes to the existing language. In its current form, subdivision (a) defines the offense, and subdivision (b) defines the "posting requirement" enacted in 1990. (Stats. 2011, c. 15 (Assem. Bill No. 109), § 492.)

Subdivision (a) thus continues to state the substantive offense: "Any person *who knowingly has* in his or her possession in any state prison … or in any county, city and

---

[9] In 1984, section 4573.6 was again amended to substitute the phrase "controlled substances" for "narcotics," and did not make any substantive changes to the elements of the offense. (*People v. Isaia* (1989) 206 Cal.App.3d 1558, 1560–1561; *Norris v. State Personnel Bd.* (1985) 174 Cal.App.3d 393, 397; § 4573.6, Westlaw Historical and Statutory Notes.)

county, or city jail" any controlled substance or paraphernalia without authorization is guilty of a felony.  (§ 4573.6, subd. (a).)

Subdivision (b) of section 4573.6 states:  "The prohibitions and sanctions addressed in this section shall be clearly and prominently posted outside of, and at the entrance to, the grounds of all detention facilities under the jurisdiction of, or operated by, the state or any city, county, or city and county."  (§ 4573.6, subd. (b).)

### 1.     Gutierrez

In *Gutierrez,* the court rejected the defendant's argument that subdivision (b)'s posting requirement was a separate offense, an additional element, or an affirmative defense to a charge of violating section 4573.6 and held the legislative history did not support these assertions.  *Gutierrez* explained the Legislature added the posting requirement because it was "particularly concerned with the fact that drugs were being brought into prisons by both visitors and correctional personnel, and that it was trying to provide additional deterrents to importation.  *It seems reasonable to conclude that the posting requirement was not intended to alter the substantive elements of the offense (and particularly not in a way that would make it harder to prove)*, but rather to provide an additional deterrent."  (*Gutierrez, supra*, 52 Cal.App.4th at p. 389, italics added.)

*Gutierrez* concluded "the provisions defining the substantive offense [of violating section 4573.6] are in the first paragraph," subdivision (a), such that "[t]he definition of the crime is complete in itself.  It does not incorporate or refer to the posting provisions in any way.  It neither makes posting an element of the crime, nor lack of posting a defense."  (*Gutierrez, supra*, 52 Cal.App.4th at p. 389; see also *Low, supra*, 49 Cal.4th at p. 389.)  "The Legislature *can* make posting an element of the crime, and has done so clearly in other statutes," but since section 4573.6 lacks appropriate language "stating that posting is an element of the crime, we hold that it is not."  (*Gutierrez,* at p. 389; *id*. at p. 390.)

**E.** *Defendant's Instructional Arguments*

Defendant contends the trial court in this case failed to instruct the jury about an additional element allegedly required to prove a violation of section 4573.6 – that he "*knew* he was in a penal institution or on the grounds of a penal institution." (Italics added.) Defendant argues this alleged element was created by the 1970 amendment to section 4573.6 because it added the word "knowingly" to the statute. Defendant argues the court's failure to instruct on this element violated his due process rights and was prejudicial error.

" 'In criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case.' [Citation.] That duty extends to ' "instructions on the defendant's theory of the case, including instructions 'as to defenses " 'that the defendant is relying on … , or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' " ' " ' [Citation.] But ' "when a defendant presents evidence to attempt to negate or rebut the prosecution's proof of an element of the offense, a defendant is not presenting a special defense invoking sua sponte instructional duties. While a court may well have a duty to give a 'pinpoint' instruction relating such evidence to the elements of the offense and to the jury's duty to acquit if the evidence produces a reasonable doubt, such 'pinpoint' instructions are not required to be given sua sponte and must be given only upon request.' " (*People v. Anderson* (2011) 51 Cal.4th 989, 996–997, italics omitted.)

We find the jury was correctly instructed with CALCRIM No. 2748 on the elements of violating section 4573.6: that the People had the burden to prove (1) the defendant possessed a controlled substance in a penal institution or on the grounds of a penal institution; (2) the defendant knew of the controlled substance's presence; (3) the defendant knew of the substance's nature or character as a controlled substance; (4) the controlled substance was methamphetamine; and (5) the controlled substance was a

usable amount. (Italics added.) As will be discussed below, defense counsel did not object to this instruction or request a pinpoint instruction on any particular issue.

### 1. The 1970 Amendment

Defendant asserts the legislative intent behind the 1970 amendment supports his interpretation about the alleged additional element required to prove a violation of section 4573.6. This court has granted defendant's request to take judicial notice of certain documents regarding the history of the 1970 amendment in support of his arguments.

" 'Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them their usual and ordinary meaning. [Citation.] The statute's plain meaning controls the court's interpretation unless its words are ambiguous.' [Citation.] If the words in the statute do not, by themselves, provide a reliable indicator of legislative intent, '[s]tatutory ambiguities often may be resolved by examining the context in which the language appears and adopting the construction which best serves to harmonize the statute internally and with related statutes.' " (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1125–1126.) "If the statute is ambiguous, we may consider a variety of extrinsic aids, including legislative history, the statute's purpose, and public policy." (*Id*. at p. 1126; *Grassi v. Superior Court* (2021) 73 Cal.App.5th 283, 290–291.)

As explained above, the 1970 amendment added the word "knowingly" to section 4573.6 so that it now states: "Any person who *knowingly* has in his or her possession in any … jail … any controlled substances … without being authorized to so possess the same is guilty of a felony…." (Italics added.)

The 1970 amendment was enacted by Senate Bill No. 846. The bill's Legislative Counsel's Digest stated it would amend section 4573.6, and the companion prohibitions in sections 4573 and 4573.5, as follows:

26.

"Extends felony prohibitions, relating to narcotics or drugs other than narcotics being brought into or possessed in specified custodial facilities or grounds thereof, to such possession or bringing of any device, contrivance, instrument or paraphernalia *intended to be* used for unlawfully injecting or consuming narcotics or drugs other than narcotics. *Requires that such possession or bringing be done knowingly.*"[10]

This statement of legislative intent is consistent with the extensive analysis in *Carrasco*, set forth above, that held "principles of statutory construction and legislative intent" showed the 1970 amendment that added the word "knowingly" addressed "the dual knowledge requirement" as "part of … section 4573.6 possession," such that the jury must be instructed that the elements of the offense included defendant's knowledge of both the nature and presence of the controlled substance. (*Carrasco, supra*, 118 Cal.App.3d at p. 947; *id*. at pp. 946, 949.) There is no evidence that the Legislature's intent behind the 1970 amendment included another knowledge requirement as suggested by defendant. To hold otherwise would engraft an additional element to the offense that is not supported by the legislative intent for the 1970 amendment, and we decline to rewrite the statute. (See, e.g., *Low, supra*, 49 Cal.4th at p. 387; *Gutierrez, supra*, 52 Cal.App.4th at pp. 389–390.)

### 2. Section 7

Defendant next argues that when the 1970 amendment added the word "knowingly" to section 4573.6, that word was already defined in section 7, subdivision (5), and the same definition of that word must be applied to how it is used in section 4573.6.

Section 7, entitled "Words and Phrases," states definitions for certain terms as used in the Penal Code, and that such words and phrases "have in this code the

---

[10] Defendant submitted three documents with his judicial notice request: (1) Senate Bill No. 846 with the Legislative Counsel's Digest; (2) the enacted bill (Stats. 1970, c. 848, pp. 1580–1581); and (3) the "Final Calendar of Legislative Business" showing the bill's procedural history and that it was signed into law. The other two documents do not contain any further discussion about the legislative intent behind the bill.

signification attached to them in this section, unless otherwise apparent from the context." (§ 7.) Defendant relies on section 7, subdivision (5), that states: "The word 'knowingly' imports only a knowledge that *the facts exist which bring the act or omission within the provisions of this code*. It does not require any knowledge of the unlawfulness of such act or omission." (§ 7, subd. (5), italics added.)

Defendant asserts that based upon the italicized definitional language in section 7, subdivision (5), the 1970 amendment that added "knowingly" to section 4573.6 should be recognized as consistent with this definition and "*as requiring proof that when a defendant possessed the controlled substance, he knew he was in a penal institution or on the grounds of a penal institution.*" (Italics added.)

The rules of construction enunciated in section 7 are "no mere rubric[s]" but the law. (*People v. Jones* (1988) 46 Cal.3d 585, 593.) Section 7, subdivision (16), however, cautions that "[w]ords and phrases must be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, must be construed according to such peculiar and appropriate meaning." (§ 7, subd. (16); *People v. Rodriguez* (2012) 55 Cal.4th 1125, 1132–1133.)[11] "Accordingly, we have held that words in a statute ' " 'should be construed in their statutory context' " ' [citation], and that '*we may reject a literal construction that is contrary to the legislative intent apparent in the statute* or that would lead to absurd results' [citation], or 'would result in absurd consequences that the Legislature could not have intended.' " (*People v. Leiva* (2013) 56 Cal.4th. 498, 506, italics added.) The general principles in section 7 do not state absolute rules, and its definitions of particular words and phrases are not controlling where it would "*lead to an interpretation that runs counter to both the legislative purpose of the statutory scheme*

---

[11] The substance of subdivision (16) has appeared in section 7 since the statute was enacted in 1872, and thus existed when the 1970 amendment to section 4573.6 was enacted. (*People v. Moses* (2020) 10 Cal.5th 893, 903.)

*and subsequent historical practice*." (*People v. Navarro* (2007) 40 Cal.4th 668, 680, italics added; see also *People v. Kozlowski* (2002) 96 Cal.App.4th 853, 865; *People v. Sekona* (1994) 27 Cal.App.4th 443, 453.)

Both section 7, subdivision (16) "and our case law [citation] direct us to construe words and phrases according to their statutory context. We consider the text in conjunction with the context and purpose of the statute even where … the statutory language has a 'highly technical' meaning." (*People v. Garcia* (2017) 2 Cal.5th 792, 805.) "When … a term has developed a particular meaning in the law, we generally presume the legislative body used the term in that sense rather than relying on ordinary usage. 'It is a well-recognized rule of construction that after the courts have construed the meaning of any particular word, or expression, and the legislature subsequently undertakes to use these exact words in the same connection, the presumption is almost irresistible that it used them in the precise and technical sense which had been placed upon them by the courts.' " (*In re Friend* (2021) 11 Cal.5th 720, 730; *People v. Moses*, *supra*, 10 Cal.5th at p. 903.) Since a term of art "must be understood as it is defined, not in its colloquial sense," the court must assume the Legislature knew the ramifications of its word choices. (*People v. Gonzales* (2017) 2 Cal.5th 858, 871 & fn. 12; *People v. Paz* (2017) 10 Cal.App.5th 1023, 1034.) Thus, the words and phrases defined in section 7 may be distinct rather than synonymous with statutory language using the same terms. (*People v. Sekona, supra*, 27 Cal.App.4th at p. 453.)

As explained above, *Carrasco* held the 1970 amendment that added "knowingly" to section 4573.6 was intended to add "the dual knowledge elements in a drug possession context. *The conclusion is inescapable that at least as of the 1970 amendment, the Legislature is presumed to have engrafted the dual knowledge concept onto … section 4573.6*," to require proof the defendant knew both of the controlled substance's presence and of the substance's nature or character as a controlled substance. (*Carrasco, supra*, 118 Cal.App.3d at p. 946, italics added.)

Defendant asserts the conclusions in *Carrasco* are not controlling since the court "did not have occasion to decide whether the term 'knowingly' meant that the defendant had to know he was in a penal institution or on the grounds of a penal institution, as defendant never raised that issue" in that case. However, *Carrasco*'s analysis of the legislative intent behind the 1970 amendment has not been undermined by the statutory history of which we have taken judicial notice – that "knowingly" was intended to add the "dual knowledge concept" to section 4573.6, and not subject to a contrary definition under section 7, subdivision (5).

### 3. Winston and Gory

Defendant acknowledges the holding in *Carrasco*, but asserts the opinion still supports his argument that section 7, subdivision (5)'s definition of "knowingly" must be applied to section 4573.6, to mean that the court had a sua sponte duty to instruct that the People had to prove that defendant knew he was in a penal institution when he possessed methamphetamine.

Defendant's argument is as follows: *Carrasco* relied on *People v. Winston, supra*, 46 Cal.2d at page 159 and *Gory*, *supra*, 28 Cal.2d at page 456, and *Winston* cited to *Gory*'s reference to the definition of "knowingly" as stated in section 7, subdivision (5). Defendant acknowledges that *Winston* addressed a different statute that previously prohibited simple possession of marijuana but argues the trial court in this case should have followed *Winston*, since it was relied on by *Carrasco*, and instruct the jury on the additional element that the People had to prove defendant knew he was in jail when he possessed methamphetamine.

*Carrasco* undermines defendant's argument. While *Carrasco* cited to both *Winston* and *Gory*, it ultimately held that "[t]he conclusion is inescapable that at least as of the 1970 amendment, the Legislature is presumed to have *engrafted the dual knowledge* concept onto … section 4573.6" since the Legislature added the word "knowingly," the "precise term which the Supreme Court had interpreted in *Winston* to

30.

require the dual knowledge elements in a drug possession context." (*Carrasco, supra*, 118 Cal.App.3d at p. 946, italics added.)

More importantly, the trial court in *Carrasco* instructed the jury with CALJIC No. 1.21's definition of "knowingly," and that instruction was based on the definition stated in section 7, subdivision (5). (*Carrasco, supra*, 118 Cal.App.3d at pp. 941–942 & fn. 1; *People v. Gregory, supra,* 217 Cal.App.3d at p. 681.) After *Carrasco* concluded the 1970 amendment added "the dual knowledge requirement" (*Carrasco*, at p. 949) as "part of … section 4573.6 possession," (*ibid.*) it further held the instructions that were given to the jury in that case were insufficient, and the trial court had a sua sponte duty to instruct that the elements of the offense included knowledge of both the nature and presence of the controlled substance, and the instructional errors were prejudicial because the jury " 'was left totally in the dark as to the nature of the intent required, the nature of the acts required to convict ….' " (*Id*. at p. 949.) *Carrasco* thus rejected any argument that an instruction based on section 7, subdivision (5) correctly defined the "knowingly" requirement added to section 4573.6 by the 1970 amendment.

We find further support for this conclusion in *Low, supra*, 49 Cal.4th 372, where the court addressed the elements of section 4573, a companion statute to section 4573.6, that prohibits any person who "*knowingly brings or sends into*, or knowingly assists in bringing into, or sending into" any controlled substance or paraphernalia into any penal institution without authorization. (§ 4573, subd. (a), italics added.) In *Low*, the defendant argued that a person could not " 'knowingly bring[]' " a controlled substance into a custodial setting under section 4573 "unless he intends to smuggle drugs into jail for some illicit purpose, such as use or sale," and the jury should have been instructed accordingly. (*Low,* at p. 385.) *Low* rejected the defendant's arguments and addressed the definition of "knowingly" contained in section 7:

> "Section 4573 contemplates a culpable mental state, but not the one defendant describes. As defined in the Penal Code, the term 'knowingly' involves '*only* a knowledge that the facts exist which bring the act or

31.

omission within the [relevant code] provisions.' (§ 7, par. 5, italics added.)
It 'does not require any knowledge of the unlawfulness of such act or
omission.' (*Ibid.*)  This definition – which is consistent with the notion of
general criminal intent – requires the accused to knowingly perform the
proscribed act, but does not involve any intent to commit a further act or
achieve a particular effect.  [Citation.]

"[T]he act that must be 'knowingly' performed to violate the 'bring[ing]'
provisions of section 4573 involves entering a prison or jail in the
possession of a controlled substance.  *In general, the knowing possession of
a controlled substance simply requires an awareness of both its physical
presence and narcotic character.*  [Citations.]

"Similar principles have been used to describe the mental state
required for certain in-custody offenses that are closely related to
section 4573.  (See *People v. Carrasco*[, *supra*,] 118 Cal.App.3d [at p.] 947
… [holding trial court erred in not instructing under § 4573.6 that
unauthorized possession of controlled substance in prison or jail requires
'dual knowledge' of drug's presence and nature] ….)

"Nothing in section 4573 or other relevant authority supports
defendant's view that the crime requires an intent or scheme to smuggle
drugs into jail *over and above the knowledge component we have
described*.  Presumably, the Legislature would have signaled whether a
special intent to fulfill such an unlawful purpose or to cause some adverse
effect bore on commission of the offense.  No such language appears in
section 4573.  [Citation.]  We decline to rewrite the statute." (*Low, supra*,
49 Cal.4th at pp. 385–387, some italics added, fn. omitted.)

While *Low* cited the definition of "knowingly" in section 7, subdivision (5), it still
interpreted the word to mean the dual knowledge requirement as in *Carrasco* – that it
required the People to prove the defendant knew both the presence and narcotic nature of
the substance at the time of possession.

F.      *Defendant's Prejudice Arguments*

While we have found the jury was correctly instructed, we briefly review
defendant's arguments that the alleged instructional error was prejudicial.  "[A]n
instructional error that improperly describes or omits an element of an offense …
generally is not a structural defect in the trial mechanism that defies harmless error
review and automatically requires reversal under the federal Constitution.  Indeed, the

high court never has held that an erroneous instruction affecting a single element of a crime will amount to structural error [citation], and the court's most recent decisions suggest that such an error, like the vast majority of other constitutional errors, falls within the broad category of trial error subject to *Chapman*[12] review." (*People v. Flood* (1998) 18 Cal.4th 470, 502–503.) The question then is whether it appears beyond a reasonable doubt that the instructional error did not contribute to the jury's verdict. (*Id*. at p. 504.)

Defendant argues the alleged instructional error was prejudicial because even though there were bilingual warning signs posted outside the basement door to the booking area, "[t]here was no evidence confirming that [defendant] saw the signage on the basement door leading into the [CRF] and that he had the ability to read it." As explained in *Gutierrez*, the posting requirement stated in subdivision (b) of section 4573.6 is not an element of the offense. (*Gutierrez, supra*, 52 Cal.App.4th at p. 389.) *Gutierrez* further rejected the argument raised in that case "that in the absence of a posting requirement, a defendant's lack of knowledge that possession of drug paraphernalia is prohibited would be an affirmative defense, which the defendant would have the burden of proving. [The defendant] concludes that the posting requirement was intended to shift this burden of proof; thus, instead of the defendant having the burden of proving lack of knowledge, the People have the burden of proving posting (i.e., constructive knowledge). *The flaw in this argument is that, '[a]s the old saying goes, "Ignorance of the law is no excuse*." ' " (*Ibid*., italics added.)

Defendant also raises several prejudice arguments that are wholly speculative, based on the established fact that before he was taken to the CRF, "he spent time at a hospital" where he received treatment for the injuries he received during the struggle with the officers. Defendant argues that if the jurors had been instructed on the alleged element that it had to find he "knew" he was in a jail, "they could have concluded there

---

12 *Chapman v. California* (1967) 386 U.S. 18.

33.

was insufficient evidence that when the methamphetamine was seized from [him], *he knew he had been taken from the hospital to a jail*." (Italics added.) Defendant further asserts he "could have believed that instead of being booked into the Kern County Jail, he was actually being taken to a different hospital or to a different part of the same hospital. The initial booking procedures involved questions from nursing staff that [defendant] could have mistaken for continued hospital treatment…. [Defendant] could have mistaken Deputy De La Huerta's pat-search for a hospital security procedure associated with his detention and arrest."

Defendant acknowledges that Deputy De La Huerta admonished him that he could not bring items into the jail, but asserts "[d]espite that admonition, there was no evidence that [defendant] ever indicated he heard and understood what Deputy De La Huerta told him. There was no evidence that [defendant] indicated his hearing was even intact," since he had just been treated at the hospital after the officers punched him in the head and face. Defendant further argues that even if he heard Deputy De La Huerta's admonition, "there was no evidence that [he] understood it" since there was no evidence that defendant spoke English or De La Huerta spoke to defendant in Spanish.

Defendant's arguments on these points are "wholly speculative" that are "not proof of actual prejudice" required for a due process violation. (*People v. Alexander* (2010) 49 Cal.4th 846, 875; *People v. Lewis* (2015) 234 Cal.App.4th 203, 213; *People v. Cordova* (2015) 62 Cal.4th 104, 120.) His arguments are also refuted by the record. Sergeant Gonzalez testified that after defendant was finally restrained, Gonzalez told him " 'The fight is over already. Get in the vehicle. You're going to jail.' " Defendant continued to curse the officers in Spanish, and spit and kicked as they escorted him to a patrol car. An ambulance arrived at the scene and medical personnel were going to treat defendant. Gonzalez opened the door to the patrol car, asked defendant if he was okay, and defendant said yes. "He was talking just fine then. I said, 'Stop spitting on them so they can treat your hand. Is that all right?' He said it was…."

34.

When the decision was made to take defendant to the hospital for treatment, Gonzalez "explained to [defendant], '[T]he fight is already over. We'll sit you in the gurney so they can treat you. Is that okay? I'm going to release your handcuff' because he was still handcuffed to the rear. [¶] His hands were behind his back. I told him, 'We're going to release the handcuffs. I'll sit you on the gurney so don't fight anymore, okay?' " Defendant agreed, complied with instructions, and did not resist as he was handcuffed to the gurney and placed in the ambulance. Officer Archuleta testified that defendant was "completely calm" during the ambulance ride.

After he was medically cleared, Officer Barker testified about escorting defendant into CRF's basement entrance to the booking area. Barker was closely questioned about where the warnings signs were posted, and whether he gave defendant sufficient time to read the signs as they walked into the booking area. Deputy De La Huerta examined the prosecution's photographs of the entrance doors and the warning signs, testified that a different door was used at the time that defendant was booked, but confirmed the bilingual warning signs were posted outside that door.

While Sergeant Gonzalez thought defendant might be under the influence of a controlled substance, section 4573.6 is a general intent offense, and defendant's possible voluntary intoxication was not an affirmative defense to the charged offense of possession of methamphetamine in jail. (*Berg, supra*, 23 Cal.App.5th at pp. 961–962.) There was no evidence that defendant was in an otherwise altered mental state or lacked the mental capacity to understand where he was that day or distinguish between being treated in a hospital and being booked into custody in a jail facility. Defendant's speculative arguments do not establish prejudice.

## G.   *Defendant's Ineffective Assistance Arguments*

Defendant argues that to the extent defense counsel may have forfeited review of his instructional challenge to his conviction in count 10 for violating section 4573.6, by failing to object to the court's instruction, that failure to object was prejudicially

ineffective. This court requested the parties to also address the impact of defense counsel's decision in closing argument to concede the People had proved the elements of count 10.

To prevail on an ineffective assistance claim, the defendant "must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice." (*People v. Bolin* (1998) 18 Cal.4th 297, 333.) "[P]rejudice must be affirmatively proved; the record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " (*Ibid*.)

We cannot ignore the procedural circumstances leading to defendant's conviction for violating section 4573.6. Defense counsel was a vigorous advocate for defendant and extensively cross-examined the officers about the nature and circumstances of the incident, defendant's reaction to their presence, the ensuring struggle, the officers' use of force, and defendant's use of the knife. In closing argument, defense counsel argued defendant was not guilty of the crimes that he allegedly committed against the officers, particularly the attempted murder and assault charges, and focused on alleged inconsistencies about the struggle between defendant and the officers, and whether defendant intended to kill them with the broken knife.

As explained above, defense counsel did not object to CALCRIM No. 2748 on count 10 and conceded in closing argument the People met the burden to prove count 10. "What's not at issue is Count 10, possession of the methamphetamine at the jail. That's on your verdict form. That's page 31. That's the last page. You're going to go to that page and vote guilty because all of the elements were proven…. [¶] I'm conceding this because Deputy De La Huerta said yeah, I searched him and found the meth. Okay, there you go."

Defendant argues defense counsel's decision to concede guilt on count 10 further supports his ineffective assistance arguments, because counsel did not realize that CALCRIM No. 2748 should have been modified to require the People to prove defendant knew he was entering a jail. Defendant asserts that given counsel's alleged instructional error, counsel had no choice but to concede his guilt in count 10. Defendant further argues there is no evidence counsel made a deliberate tactical decision to acknowledge the People proved the elements of count 10 and, even if counsel made such a decision, it was uninformed and incompetent.

"Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " (*People v. Lucas* (1995) 12 Cal.4th 415, 436–437.) "Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts. [Citation.] To the extent the record on appeal fails to disclose why counsel acted or failed to act in the manner challenged, we will affirm the judgment 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation ....' " (*People v. Bolin, supra*, 18 Cal.4th at p. 333.) Where counsel's " 'trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions.' " (*People v. Jones* (2003) 29 Cal.4th 1229, 1254.)

We have already rejected defendant's arguments about the alleged instructional error. Based on the record before this court, we further reject defendant's claims of ineffective assistance. The record suggests several reasons why defense counsel made an apparent strategic decision to concede in closing argument that the People had met the burden of proof for count 10, possession of methamphetamine in jail. As already explained, defendant's possible voluntary intoxication was not a defense to the charged

37.

violation of section 4573.6, a general intent crime, that prevented any claim that he was unable to perceive his surroundings because he was under the influence of narcotics. While the crime did not include a "posting requirement," defense counsel may have known defendant could read English and/or Spanish, he was fully aware that Officer Barker escorted him into a jail, and/or he heard and understood Deputy De La Huerta's advisement about not bringing prohibited items into the jail.

The record also suggests defense counsel conceded the People proved count 10 in an attempt to maintain credibility with the jury and focus its attention on whether the People proved the more serious charges of attempted murder and assault. "The evidence presented to the jury virtually forced this concession." (*People v. Merritt* (2017) 2 Cal.5th 819, 832.) There is no evidence defendant objected to counsel's decision to concede the People had proved count 10. (Cf. *McCoy v. Louisiana* (2018) __ U.S. __ [138 S.Ct. 1500, 1508]; *People v. Lopez* (2019) 31 Cal.App.5th 55, 63.)

## II.    Remand for Resentencing

At the sentencing hearing, the court imposed an aggregate term of six years four months in prison, and stayed the terms imposed for two counts pursuant to section 654.

"Section 654 prohibits multiple punishment for any single act or omission. If a single action or course of conduct by a defendant violates multiple laws, 'the distinct crimes may be charged in separate counts and may result in multiple verdicts of guilt, [but] the trial court may impose sentence for only one offense ….' [Citation.] Until recently, the law required trial courts to impose sentence 'under the provision that provides for the longest potential term of imprisonment.' [Citation.] In 2021, however, the Legislature enacted Assembly Bill No. 518 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 441), which removes the requirement to impose the longest prison term. As the preamble to the bill explains, it allows 'an act or omission that is punishable in different ways by different laws to be punished under either of those provisions.' " (*People v. Sek* (2022) 74 Cal.App.5th 657, 673.) As a result of the amendments, a court now has

discretion to select the longer or shorter sentence when imposing one term and staying another pursuant to section 654.  (See § 654, subd. (a).)

Defendant contends, and the People agree, that the matter must be remanded for the court to reconsider its sentence based on the enactment of Assembly Bill No. 518 (2021–2022 Reg. Sess.), and that the amendments apply retroactively to this case since his sentence was not final when they were enacted.  (*People v. Sek, supra*, 74 Cal.App.5th at p. 673.)

We thus remand the matter for another sentencing hearing.

## DISPOSITION

Defendant's convictions are affirmed.  Defendant's sentence is vacated and the matter remanded for the court to reconsider the sentence in light of the amendments to section 654.


POOCHIGIAN, ACTING P. J.

WE CONCUR:


DETJEN, J.


PEÑA, J.